Javier **VILLANUEVA**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 10–05–00288–CR.

Court of Appeals of Texas,
Waco.

Oct. 18, 2006.

Allen D. Place, Gatesville, for appellant.

David A. Castillo, Coryell County Dist. Atty., Gatesville, for appellee.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

BILL VANCE, Justice.

The trial court convicted Javier Villanueva (who had waived his right to a jury) of indecency with a child by contact, a second-degree felony, and assessed a ten-year prison sentence. Villanueva's appointed appellate counsel has filed an *Anders* brief and a motion to withdraw as counsel. *See Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). Counsel and this court have notified Villanueva of his right to file a pro se brief or response, but he has not done so. We will affirm the trial court's judgment.

Counsel's *Anders* brief considers all the issues in areas relevant to an appeal of a felony conviction of indecency with a child by contact in a nonjury trial. *See Sowels v. State*, 45 S.W.3d 690, 691 (Tex.App.-Waco 2001, no pet.), *overruled on other grounds by Meza v. State*, 206 S.W.3d 684, 688 (Tex.Crim.App.2006). The brief contains references to the record and to applicable statutes, rules, and cases, and it discusses why counsel concludes that the record does not present any arguable issues, including the identification of five issues and discussing why counsel concludes that they are not arguable and that the appeal is wholly frivolous.[1] *See id.* at 691–92.

### The Appellate Court's Duty in *Anders* Cases

We must always conduct an independent review of the record to determine

---

1. We have previously found that even an ap-    peal following a contested trial might present

whether there are any arguable grounds for appeal. *See Stafford v. State*, 813 S.W.2d 503, 511 (Tex.Crim.App.1991). And when an *Anders* brief raises potentially arguable issues, our "duty is to determine whether there are any arguable grounds and if there are, to remand to the trial court so that new counsel may be appointed to brief the issues." *Bledsoe v. State*, 178 S.W.3d 824, 827 (Tex.Crim.App. 2005). But we are not required to review the merits of each claim raised in an *Anders* brief or a pro se response. *Id.*

■ Stated another way, if counsel in an *Anders* brief or the appellant in a pro se response points out a potential issue, we must determine whether it is arguable or frivolous. *See, e.g., Coronado v. State*, 996 S.W.2d 283 (Tex.App.-Waco 1999, no pet.); *Taulung v. State*, 979 S.W.2d 854, 856 (Tex.App.-Waco 1998, no pet.). This duty raises several questions. First, what are "arguable" and "frivolous" issues? Second, by what process do we make the determination that an issue is arguable or frivolous? And third, do we conduct that process transparently or summarily?

■ Any issue that is "arguable on [the] merits" is, by definition, not frivolous. *See Anders*, 386 U.S. at 744, 87 S.Ct. at 1400. The United States Supreme Court has defined a "wholly frivolous" appeal as one that "lacks any basis in law or fact." *McCoy v. Court of Appeals*, 486 U.S. 429, 438 n. 10, 108 S.Ct. 1895, 1902 n. 10, 100 L.Ed.2d 440 (1988); *cf. De La Vega v. Taco Cabana, Inc.*, 974 S.W.2d 152, 154 (Tex.App.-San Antonio 1998, no pet.) ("It is well established . . . that a proceeding is 'frivolous' when it 'lacks an arguable basis either in law or in fact.' ") (quoting *Neitzke v. Williams*, 490 U.S. 319, 325, 109 S.Ct. 1827, 1831–32, 104 L.Ed.2d 338 (1989)).

Also, "[a]n appeal is 'frivolous' when 'the trial court's ruling[s were] correct' or 'the appellant was not harmed by the ruling[s].' " *Wilson v. State*, 955 S.W.2d 693, 695 n. 2 (Tex.App.-Waco 1997, no pet.) (quoting *High v. State*, 573 S.W.2d 807, 813 (Tex.Crim.App. [Panel Op.] 1978)). This different definition merely represents a different facet of the *Anders* process. *Taulung*, 979 S.W.2d at 856. Once counsel has determined that an appeal is frivolous, counsel must file a brief identifying anything in the record that might arguably support the appeal and discussing either why the trial court's rulings were correct or why the appellant was not harmed by the rulings. *Id.* "If the only theories that the attorney can discover after [a] conscientious review of the record and the law are 'arguments that cannot conceivably persuade the court,' then the appeal should be considered frivolous." *Johnson v. State*, 885 S.W.2d 641, 645 (Tex.App.-Waco 1994, pet. ref'd) (quoting *McCoy*, 486 U.S. at 436, 108 S.Ct. at 1901).

■ We determine whether issues identified by counsel are "frivolous" on a case-by-case basis. *Taulung*, 979 S.W.2d at 857. "Necessarily, . . . both questions of fact and questions of law may be involved in a determination that an appeal is frivolous." *De La Vega*, 974 S.W.2d at 154. In determining whether an issue is frivolous, we do not address and rule on its ultimate merit. *Bledsoe*, 178 S.W.3d at 827; *Mitchell v. State*, 193 S.W.3d 153, 156 (Tex.App.-Houston [1st Dist.] 2006, no pet. h.).

When counsel has presented potentially arguable issues in an *Anders* brief, we have detailed our analyses of those issues in determining whether or not they are arguable. *See, e.g., Johnson v. State*, No.

no issues of arguable merit. *See Taulung v. State*, 979 S.W.2d 854, 858 (Tex.App.-Waco

1998, no pet.) (bench trial of sexual assault case).

10–05–236–CR, 2006 WL 2439737 (Tex. App.-Waco Aug. 23, 2006, no pet. h.) (mem. op.) (not designated for publication); *Fernandez v. State*, No. 10–01–121–CR, 2003 WL 131852 (Tex.App.-Waco Jan. 15, 2003, no pet.) (not designated for publication); *Coronado*, 996 S.W.2d 283; *cf. In re K.D.*, 202 S.W.3d 860 (Tex.App.-Fort Worth 2006, no pet. h.) (reviewing trial court's determination that appeal of termination of parental rights was frivolous). *Bledsoe* does not preclude us from articulating our analysis; it states that such an exercise is not required. *Bledsoe*, 178 S.W.3d at 827.

In this case, as we detail below, counsel identified and briefed five issues (in a twenty-page brief). The dissent would have us summarily state our determination that the issues identified by counsel are frivolous, thus omitting from the opinion the analysis behind our determination. Presumably, the portion of our opinion pertaining to the five briefed issues should only state: "Counsel's *Anders* brief raises five issues; we determine that they are frivolous."

When potentially arguable issues are raised and briefed by counsel in an *Anders* brief, we believe it is sometimes necessary to identify the issues and to provide the appellant, the bar, and the public with the analysis behind our frivolousness determination.[2] This transparency comports with the spirit of the applicable appellate rules (*see* Tex.R.App. P. 47.1, 47.4) and only increases confidence in the judiciary—especially when it occurs in an appellant's only appeal of right. We will thus provide a transparent, detailed analysis of the five issues raised and briefed by counsel in this case.[3]

**2.** A pro se response that raises and briefs potentially arguable issues also could warrant a detailed analysis.

## Background

The indictment alleged that Villanueva, with intent to arouse or gratify his sexual desire, intentionally or knowingly caused A.H., a child younger than 17 and not his spouse, to engage in sexual contact with him by causing her to touch his genitals. Villanueva was charged in two other cases with intentionally or knowingly engaging in sexual contact with 12–year–old A.H. and 13–year–old D.H. (who were Villanueva's stepdaughters) by touching their breasts. Villanueva's trial counsel filed numerous pretrial motions for discovery, including motions requesting the State's witness list and notice of extraneous offenses. The trial court granted the motions. The three cases were tried together; the trial court acquitted Villanueva on the two breast-touching cases.

## Late Notice of Witnesses

■ The first potentially arguable issue identified in counsel's *Anders* brief is whether the trial court erred in not excluding two State's witnesses whom trial counsel alleged were untimely identified. The State filed its amended witness list eleven days before trial; it included two CPS workers not previously identified. Despite a certificate of service showing hand-delivery to defense counsel, he asserted he did not receive it and did not know about it until four days before trial. He filed a motion to exclude the two witnesses, but the trial court, after confirming that Villanueva did not want a continuance and time to prepare for the new witnesses' testimony, denied the motion. Only Kim Walker, one of the two new witnesses, testified at trial; the other did not.

**3.** We will let others assess the concurring opinion's characterization of this opinion as "mind-numbing."

■ On the defendant's request, the State should give notice of its witnesses. *Stoker v. State*, 788 S.W.2d 1, 15 (Tex.Crim.App.1989); *Horner v. State*, 129 S.W.3d 210, 214 (Tex.App.-Corpus Christi 2004, pet. ref'd). If the trial court allows an undisclosed witness to testify, we review the decision for abuse of discretion. *Horner*, 129 S.W.3d at 214; *Castaneda v. State*, 28 S.W.3d 216, 223 (Tex.App.-El Paso 2000, pet. ref'd) (citing *Stoker*, 788 S.W.2d at 15). In determining whether the trial court abused its discretion, we consider whether: (1) the prosecutor acted in bad faith in failing to provide the defense with the name of the witness; and (2) the defendant could reasonably anticipate that the witness would testify despite the State's failure to disclose the witness's name. *See Stoker*, 788 S.W.2d at 15; *Horner*, 129 S.W.3d at 214; *Castaneda*, 28 S.W.3d at 223. In determining whether the State acted in bad faith in failing to provide the name of the witness, we consider whether the State intended to deceive, whether the State's notice left adequate time to prepare, and whether the State freely provided the defense with information. *See Horner*, 129 S.W.3d at 214; *Hardin v. State*, 20 S.W.3d 84, 88 (Tex. App.-Texarkana 2000, pet. ref'd); *see also Stoker*, 788 S.W.2d at 15.

Villanueva cannot show bad faith on the State's part, nor can Villanueva show surprise since Walker was identified as someone Villanueva had spoken with as part of CPS's investigation. Walker had been identified in the police report, previously provided in discovery, with a notation that Walker had spoken with Villanueva as part of her CPS investigation. Also, Villanueva's trial counsel told the trial court that the prosecutor had come to his office a few days before trial to inform him of the possibility of one or two CPS witnesses. And four days before trial, the prosecutor told counsel at court of the amended witness list. The trial court also offered Villanueva a continuance, but he did not want it. Finally, the trial court excluded the key evidence Walker was to offer—Villanueva's statement to her during her CPS investigation—sustaining trial counsel's objection that the statement was made during custodial interrogation without *Miranda* warnings.

Given the above facts, we agree with counsel that Villanueva cannot show that the trial court abused its discretion in allowing Walker to testify. *See Stoker*, 788 S.W.2d at 15; *Horner*, 129 S.W.3d at 214; *Castaneda*, 28 S.W.3d at 223. Thus, this ruling is not an issue that might arguably support an appeal; a ground that the trial court abused its discretion is not supported by the facts or the law.

## Sufficiency of the Evidence

■ The second potentially arguable issue raised in the *Anders* brief is the sufficiency of the evidence to support the trial court's guilt finding. We consider the well-established standards of review for legal and factual sufficiency of the evidence. *See, e.g., Abbott v. State*, 196 S.W.3d 334, 338–39 (Tex.App.-Waco 2006, pet. filed).

A.H. testified that on the night in question, Villanueva entered her and her sister's bedroom around 1:00 or 2:00 a.m. and woke them up to do chores the night before the "Welcome Home" celebration for some of the "4th ID" soldiers at Fort Hood. When the chores were done, A.H. laid down on her side on a pallet on the bedroom floor. Villanueva laid down behind her and began thrusting his lower body against hers. She could feel his penis. When she asked him what he was doing, he responded, "Well, somebody's got to teach you." When she told him to stop, he told her to at least give him a kiss,

and he tried to put his tongue in her mouth. She screamed, and her mother came in the bedroom, while Villanueva went in the bathroom. A.H. told her mother what had happened, and her mother said she would talk to him.

D.H. said she was sleeping when she heard A.H. scream. She awoke and saw Villanueva and A.H. in the room but nothing else. She heard her mother getting out of bed and come to the room, and Villanueva went in the bathroom. A couple of months later, A.H. and D.H. went to stay with their grandparents for the summer, and A.H. made an outcry to her grandmother about Villanueva's alleged sexual assault. Her grandmother contacted CPS and the police and made a written statement, and then A.H. did a videotaped interview with CPS.

A person commits the offense of indecency with a child "if, with a child younger than 17 years and not the person's spouse, whether the child is of the same or opposite sex, the person ... engages in sexual contact with the child or causes the child to engage in sexual contact." TEX. PEN. CODE ANN. § 21.11(a)(1) (Vernon 2003). In section 21.11, "sexual contact" means the following acts, if committed with the intent to arouse or gratify the sexual desire of any person: "(2) any touching of any part of the body of a child, including touching through clothing, with the anus, breast, or any part of the genitals of a person...." *Id.* § 21.11(c)(2). An offense under subsection (a)(1) is a second-degree felony. *Id.* § 21.11(d).

A.H. was younger than 17 and was not Villanueva's spouse. In addition to the above, she also testified that Villanueva was moving the front of his lower body against her and his penis felt like it was "poking [her] butt." A complainant's testimony alone is sufficient to support a conviction for indecency with a child. TEX.

CODE CRIM. PROC. ANN. art. 38.07 (Vernon 2005) (requirement that victim inform another person within one year does not apply to person under 17 at time of offense); *see Garcia v. State,* 563 S.W.2d 925, 928 (Tex.Crim.App.1978).

The requisite specific intent to arouse or gratify can be inferred from the defendant's conduct and remarks and all the surrounding circumstances. *Robertson v. State,* 871 S.W.2d 701, 705 (Tex. Crim.App.1993); *McKenzie v. State,* 617 S.W.2d 211, 216 (Tex.Crim.App. [Panel Op.] 1981); *Gottlich v. State,* 822 S.W.2d 734, 741 (Tex.App.-Fort Worth 1992, pet. ref'd), *abrogated on other grounds by Arevalo v. State,* 943 S.W.2d 887, 888–90 (Tex. Crim.App.1997). An oral expression of intent is not required; the conduct itself is sufficient to infer intent. *C.F. v. State,* 897 S.W.2d 464, 472 (Tex.App.-El Paso 1995, no writ). Thus, the trial court could infer from Villanueva's conduct that it was done with the intent to arouse and gratify his sexual desire. *See Gottlich,* 822 S.W.2d at 741; *Fetterolf v. State,* 782 S.W.2d 927, 933 (Tex.App.-Houston [14th Dist.] 1989, pet. ref'd).

The indictment alleged that the offense occurred on or about June 12, 2004, but it was clear that it actually occurred in April 2004. The indictment's "on or about" language allows the State to prove a date other than one alleged in the indictment as long as the date is anterior to the presentment of the indictment and within the statutory limitation period. *See Sledge v. State,* 953 S.W.2d 253, 256 (Tex. Crim.App.1997); *Shea v. State,* 167 S.W.3d 98, 104 (Tex.App.-Waco 2005, pet. ref'd).

A.H. admitted on cross-examination that she had not mentioned feeling Villanueva's penis when she first told her mother and grandmother about the incident. A.H. and D.H. both testified that they did not like

how Villanueva punished them, and there was evidence that A.H. did not seem upset the following day. A.H.'s mother, who was still married to and living with Villanueva at the time of trial, said that she saw him lying on the floor behind A.H. and that A.H. told her that Villanueva was "being nasty." She asked A.H. to explain, and A.H. said that he had tried to kiss her; the mother did not recall A.H. saying anything about Villanueva rubbing her behind. A.H.'s grandmother testified over objection as the outcry witness. Her testimony was consistent with A.H.'s, but her written statement did not mention Villanueva's penis.

We agree with counsel that sufficiency of the evidence is not an issue that might arguably support an appeal.

### Extraneous Offenses

■■■■ An extraneous offense is any act of misconduct, whether resulting in prosecution or not, that is not shown in the charging papers and shown to have been committed by the accused. *Rankin v. State,* 953 S.W.2d 740, 741 (Tex.Crim.App. 1996); *Shea,* 167 S.W.3d at 104. Evidence of multiple occurrences of the defendant's same conduct against the same victim is admissible, and such evidence does not amount to evidence of extraneous offenses if it can be included in the indictment. *See Worley v. State,* 870 S.W.2d 620, 621–23 (Tex.App.Houston [1st Dist.] 1994, pet. ref'd).

Trial counsel objected to A.H.'s and D.H.'s testimony about other instances of Villanueva touching their breasts, alleging that those instances were extraneous offenses for which notice had not been given. These acts were identical to the charges in the other two cases that were tried together and thus were not extraneous offenses. Based on the record, we agree with counsel that the trial court's admission of these acts is not an issue that might arguably support an appeal.

### Outcry Witness

■■■■ The trial court overruled counsel's objection to the State's calling the grandmother as an outcry witness. The outcry-witness statute applies in a prosecution of an offense against a child 12 years of age or younger and only to statements that describe the alleged offense that (1) were made by the child complainant and (2) were made to the first person, 18 years of age or older, other than the defendant, to whom the child made a statement about the offense. Tex.Code Crim. Proc. Ann. art. 38.072 (Vernon 2005). The Court of Criminal Appeals has construed this to mean the first adult "to whom the child makes a statement that in some discernible manner describes the alleged offense. [This] statement must be more than words which give a general allusion that something in the area of child abuse was going on." *Garcia v. State,* 792 S.W.2d 88, 91 (Tex.Crim.App.1990). "[A] trial court has broad discretion in determining" the proper outcry witness. *Id.* at 92. Thus, we review a trial court's ruling for an abuse of discretion. *Id.* at 91–92.

■■■ The proper outcry witness is the adult to whom the complainant first tells "how, when, and where" she was assaulted. *See Hanson v. State,* 180 S.W.3d 726, 730 (Tex.App.Waco 2005, no pet.); *Sims v. State,* 12 S.W.3d 499, 500 (Tex.App.Dallas 1999, pet. ref'd). Here, while it is clear that A.H. first told her mother about the incident, her mother denied that A.H. made an outcry that Villanueva had rubbed his penis against her. The trial court could have concluded that A.H. did not tell her mother the "how"—all of the details—of Villanueva's conduct. The trial court also noted that the mother was aligned with Villanueva at trial.

The potentially arguable issue identified by counsel is whether the trial court abused its discretion in determining that the grandmother was the proper outcry witness. *See Hanson,* 180 S.W.3d at 730; *Smith v. State,* 131 S.W.3d 928, 931 (Tex. App.-Eastland 2004, pet. ref'd) (complainant told mother and doctor that defendant "had been performing oral sex on him" then later provided details to another adult); *Castelan v. State,* 54 S.W.3d 469, 475–76 (Tex.App.Corpus Christi 2001, no pet.) (complainant told grandmother that defendant had "put his thing in through the back" then later provided details to counselor); *Sims,* 12 S.W.3d at·500 (complainant told mother that defendant "had touched her private parts," then later provided details to counselor). However, we agree with counsel that the trial court's finding that the grandmother was the outcry witness is not an issue that might arguably support an appeal.

## Ineffective Assistance of Counsel

The standard in *Strickland v. Washington* applies to a claim of ineffective assistance of counsel. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prevail, a defendant must first show that his counsel's performance was deficient. *Id.* at 687, 104 S.Ct. at 2064; *see Mitchell v. State,* 68 S.W.3d 640, 642 (Tex.Crim.App.2002). Then it must be shown that this deficient performance prejudiced the defense. *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064.

Appellate review of defense counsel's representation is highly deferential and presumes that counsel's actions fell within the wide range of reasonable and professional assistance. *Mallett v. State,* 65 S.W.3d 59, 63 (Tex.Crim.App.2001); *Tong v. State,* 25 S.W.3d 707, 712 (Tex.Crim. App.2000). Under normal· circumstances,

the record on direct appeal will not be sufficient to show that counsel's representation was so deficient and so lacking in tactical or strategic decision-making as to overcome the presumption that counsel's conduct was reasonable and professional. *See Goodspeed v. State,* 187 S.W.3d 390, 392 (Tex.Crim.App.2005); *Mitchell,* 68 S.W.3d at 642. Rarely will the trial record contain sufficient information to permit a reviewing court to fairly evaluate the merits of such a serious allegation: "[i]n the majority of cases, the record on direct appeal is simply undeveloped and cannot adequately reflect the failings of trial counsel." *Thompson v. State,* 9 S.W.3d 808, 813–14 (Tex.Crim.App.1999); *see also Mitchell,* 68 S.W.3d at 642 ("The reasonableness of counsel's choices often involves facts that do not appear in the appellate record. A petition for writ of habeas corpus usually is the appropriate vehicle to investigate ineffective-assistance claims.").

In the absence of evidence of trial counsel's reason for the challenged conduct, we assume a strategic reason for trial counsel's conduct, if one can be imagined. *Garcia v. State,* 57 S.W.3d 436, 440 (Tex. Crim.App.2001) ("an appellate court 'commonly will assume a strategic motivation if any can possibly be imagined,' and will not conclude the challenged conduct constituted deficient performance unless the conduct was so outrageous that no competent attorney would have engaged in it") (quoting 3 W. Lafave, et al., Criminal Procedure § 11.10(c) (2d ed.1999), and citing *Thompson,* 9 S.W.3d at 814). But, if nothing in the record reveals trial counsel's reason, it is improper for us to speculate on it. *See Thompson,* 9 S.W.3d at 814.

As counsel notes in the *Anders* brief, Villanueva's trial counsel filed and obtained rulings on appropriate pretrial motions. He was diligent in protecting the record for appeal, was thorough in examin-

ing witnesses, and obtained an acquittal in the other two cases. The range of punishment for a second-degree felony is two to twenty years in prison. In the punishment phase the State proved a prior sexual offense, which trial counsel addressed. He advanced Villanueva's arguments and asked for deferred adjudication, but the trial court imposed a ten-year sentence.

We agree with counsel that, based on the record, an ineffective assistance claim is not an issue that might arguably support an appeal.

### Conclusion

We have also conducted an independent review of the record to determine whether there are any other arguable grounds for appeal. *See Stafford*, 813 S.W.2d at 511. We determine there are none. Accordingly, we affirm the judgment.

Counsel must advise Villanueva of our decision and of his right to file a pro se petition for discretionary review. *See Sowels*, 45 S.W.3d at 694; *see also Meza v. State*, 206 S.W.3d 684, 689 n. 23, (Tex. Crim.App.2006); *Ex parte Owens*, 206 S.W.3d 670 (Tex.Crim.App.2006). We grant counsel's motion to withdraw, effective upon counsel's advising Villanueva of our decision and of his right to file a pro se petition for discretionary review. *See Meza*, 206 S.W.3d at 689.

Chief Justice GRAY concurring.

TOM GRAY, Chief Justice, concurring.

Somewhere, somehow, this Court has assumed a burden in *Anders* appeals which far exceeds that necessary for a proper disposition. In fact, the burden which we assume may seriously jeopardize a defendant's position in subsequent proceedings. This case represents a classic example. After 11 mind-numbing pages of discussion of the issues discussed in counsel's *Anders*

brief, we get to the relevant part of the opinion.

The majority, while properly stating our duty, erroneously conditions it upon the filing of "an *Anders* brief [which] raises potentially arguable issues...." Maj. Op. pg. 243. The majority then purports to restate our duty, but again states it erroneously by stating: "Stated another way, if counsel in an *Anders* brief or the appellant in a pro se response points out a potential issue, we must determine whether it is arguable or frivolous." Maj. Op. pg. 243. The error in this statement is conditioning the duty of this Court on the issues we review as having been those issues presented by counsel or the defendant. The duty of this Court to review the record and determine if any non-frivolous issues are present is a duty which exists whether or not counsel or the appellant raises or identifies the issue as a potential issue.

The majority goes on to state:

This duty raises several questions. First, what are "arguable" and "frivolous" issues? Second, by what process do we make the determination that an issue is arguable or frivolous? And third, do we conduct that process transparently or summarily?

*Id.*

With all due respect, a "duty" cannot raise questions. Further, the first two questions must be rhetorical because the answers are so well developed under existing law. And the third question is the straw man set up to be knocked down by making some laudatory-sounding arguments that need further examination.

Our duty and how we fulfill that duty has recently been clarified by the Court of Criminal Appeals.

When faced with an *Anders* brief and if a later *pro se* brief is filed, the Court of Appeals has two choices. It may deter-

mine that the appeal is wholly frivolous and issue an opinion explaining that it has reviewed the record and finds no reversible error. *Anders,* 386 U.S. at 744, 87 S.Ct. 1396. Or, it may determine that arguable grounds for appeal exist and remand the cause to the trial court so that new counsel may be appointed to brief the issues. *Stafford,* 813 S.W.2d at 511.

*Bledsoe v. State,* 178 S.W.3d 824, 826–827 (Tex.Crim.App.2005).

The Court in *Bledsoe* also described the limitations on the scope of our duty. Bledsoe complained that the court of appeals had not reviewed the issues raised in Bledsoe's pro se brief, to which the Court of Criminal Appeals responded:

> ... the court of appeals is not required to review the merits of each claim raised in an *Anders* brief or a *pro se* response. The court's duty is to determine whether there are any arguable grounds and if there are, to remand to the trial court so that new counsel may be appointed to brief the issues.

*Bledsoe,* 178 S.W.3d at 827. This statement regarding the limitation on our duty cuts strongly against the majority's view that our duty includes expressly reviewing the issues raised either by counsel in an *Anders* brief or the appellant in a pro se brief or other response.

On page 249 of the majority opinion, the Court finally gets to the relevant analysis that, having conducted an independent review of the record, we have determined that there are no arguable grounds for an appeal. Accordingly, the Court affirms the judgment.

In responding to this concurring opinion, Justice Vance says we are not required to make the type analysis he does but that we

are not precluded from it, citing *Bledsoe.* But if we are not required, then the discussion is not necessary to the disposition of the appeal. The Rules of Appellate Procedure and *Bledsoe* attempt to limit our opinion to include only the discussion necessary. Tex.R.App. P. 47.1 (The court's opinion "should be 'no longer than necessary to advise the parties of the court's decision and the basic reasons for it.'" *Bledsoe,* 178 S.W.3d at 826 (citing Rule 47.1)). So if that which is not required is unnecessary, and we are only to include that which is necessary, then we are required to exclude unnecessary analysis from our opinions. The conclusion in *Bledsoe* cites this rule as follows:

> Due to the nature of *Anders* briefs, by indicating in the opinion that it considered the issues raised in the briefs and reviewed the record for reversible error but found none, the court of appeals met the requirements of Texas Rule of Appellate Procedure 47.1.

*Bledsoe,* 178 S.W.3d at 827–828.

The Court set out the entire opinion of the court of appeals in its opinion. It covers just over one half page of text in the reported decision. *Id.* at 825. Our conclusion need only indicate, as did the court of appeals in *Bledsoe,* that we have performed our duty to review the entire record for any non-frivolous issue and have found none.[1]

Further, Justice Vance has invited others to assess my characterization of his analysis. Because he chooses to respond and invites the reader to make the determination, the reader should be armed with a bit more information about why I decided to use these precise words ("mind-numbing"). Because his discussion of the issues, even according to him, does not

---

1. The actual conclusion in the court of appeals decision was: "We likewise reviewed the record for reversible error and have found none." *Id.* at 825.

decide the issue, I must question: What, then, is the point of the extended discussion of every issue raised by counsel in the *Anders* brief? Any person reading his analysis would be hard pressed to find a distinction between his analysis and the conclusion that he reaches if he were actually deciding the merits of the issue. Is it really any different to say "the attorney has concluded the issue is without merit and we agree" versus "we conclude that the issue is without merit." But my concern is, however, less about this overt aspect of his review than the subliminal agenda.

In this opinion, he establishes his right to do this review of the issues and forces the other justices to read, analyze, and note disagreement with it. And he notes we have done it in the past in other opinions. However, part of his argument for doing this analysis is to educate the appellant, the bar, and the public with the analysis behind our determination. Maj. Op. pg. 244. And in support of this statement, he notes we have detailed our analyses before citing two unpublished opinions from this Court. Maj. Op. pg. 243–44. So much for educating the bench, the bar, and the public with unpublished opinions.

And in evaluating the need to include this extensive discussion, it is very important to remember that we cannot create any new law in one of these *Anders* opinions to resolve the merits of an issue. The law on the issues should already be clear and obvious to the bar and the public. If we are creating, or even pushing the law a little further in one direction or another, I question whether the issue is not then, by definition, arguable.

But here comes the insidious nature of the methodology and purpose for the extensive discussion. Having established his right to engage in the expansive discussion and analysis in this opinion, he can do it in another *Anders* opinion. And whether it is his discussion on an issue in this *Anders* opinion, or his discussion on an issue in a future or past *Anders* opinion, that discussion will be cited back to me as authority on that issue or for another purpose accompanied by the logic that we have already unanimously agreed with it. And because it is easy to let your mind become numb and get drawn into these subtle agreements due to the press of the volume of work, particularly when we agree with the result, we thus neglect to challenge the need for the statement, analysis, or conclusion. And suddenly, in a subsequent opinion and result where it does matter, we are looking at an analysis that we previously indicated agreement with by not concurring or dissenting.

That is one of the reasons why I feel such a compelling need to alert the reader to the prospective problem of including unnecessary discussion, also known as dicta, in an opinion. *See Nu–Way Energy Corp. v. Delp*, 205 S.W.3d 667, 685, 686 (Tex.App.-Waco 2006, no pet. h.) (Gray, C.J., concurring); *Walker v. State*, 201 S.W.3d 841, 853 (Tex.App.-Waco 2006, pet. filed) (Gray, C.J., concurring); *Wachovia Bank of Del., N.A. v. Gilliam*, No. 10–04–00038–CV, 2005 WL 1531293, *4, 2005 Tex. App. LEXIS 5039, *10 (Tex.App.-Waco June 29, 2005, pet. filed) (mem. op.) (Gray, C.J., concurring); *Hasty v. State*, No. 10–04–00131–CR, 2005 WL 1981446, *4, 2005 Tex.App. LEXIS 6597, *11–12 (Tex.App.-Waco Aug.17, 2005, no pet.) (mem. op.) (Gray, C.J., concurring); *Fewins v. State*, 170 S.W.3d 293, 298 (Tex.App.-Waco 2005, order) (Gray, C.J., concurring); *In re Clark*, No. 10–03–00037–CV, 2004 WL 1632768, *7, 2004 Tex.App. LEXIS 6587, *20 (Tex.App.-Waco July 21, 2004, orig. proceeding) (Gray, C.J., dissenting on rehearing); *Kelly v. State*, 151 S.W.3d 683, 687 (Tex.App.-Waco 2004, no pet.) (Gray,

**252**

C.J., concurring); *Loredo v. State*, 157 S.W.3d 26, 34 (Tex.App.-Waco 2004, pet. ref'd) (Gray, C.J., concurring); *Jefferson v. State*, No. 10–03–00334–CR, ·2004 WL 3008742, *3, 2004 Tex.App. LEXIS 11796, *8 (Tex.App.-Waco Dec. 29, 2004, no pet.) (mem. op.) (Gray, C.J., concurring); *State v. Fowler*, 97 S.W.3d 721, 722 (Tex.App.-Waco 2003, no pet.) (Gray, J., concurring); *In re Keeter*, 134 S.W.3d 250, 258 (Tex. App.-Waco 2003, orig. proceeding) (Gray, J., dissenting); *Shugart v. State*, 32 S.W.3d 355, 369 (Tex.App.-Waco 2000, pet. ref'd) (Gray, J., concurring); *Leander Cut Stone Co. v. Brazos Masonry, Inc.*, 987 S.W.2d 638, 641 (Tex.App.-Waco 1999, no pet.) (Gray, J., concurring); *Johnson v. State*, 995 S.W.2d 926, 932 (Tex.App.-Waco 1999, no pet.) (Gray, J., concurring).
It is because dicta has a nasty way of coming back cited to me as a precedential holding. So the only tool which I have to push back with on this type of improper development of the law is my pen, a lone voice crying in the judicial wilderness, begging the majority to please abide by the rule and limit our discussion to only that which is necessary for a disposition of the appeal. I must constantly push back.

Because contrary to *Bledsoe's* express statement of our duty in an *Anders* appeal, and contrary to the Rules of Appellate Procedure, the Court engages in an extensive, unnecessary discussion of the issues raised in counsel's *Anders* brief, I cannot join the opinion. I can only join the judgment that affirms Villanueva's conviction. Accordingly, I concur only in the judgment of the Court.