In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-08-00061-CR


______________________________




FRANKIE LEE JONES, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 217th Judicial District Court


Angelina County, Texas


Trial Court No. 26,678




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Moseley



MEMORANDUM OPINION



 Frankie Lee Jones challenges his two convictions in Angelina County (1) for aggravated sexual
assault and one for indecency with a child. A single indictment charged Jones with two counts of
indecency with a child by contact and two counts of aggravated sexual assault on a child. He was
convicted of both indecency counts (counts I and II) and one count of aggravated sexual assault of
a child (count III) but was acquitted of the second count of aggravated sexual assault (count IV). The
trial court accepted the jury's verdicts and followed the jury's recommendations in sentencing Jones
to eighteen years' and fifteen years' confinement, respectively, on the indecency counts and to forty-five years' confinement on the count of aggravated sexual assault of a child. The trial court ordered
Jones's sentences be served concurrently. 

 Jones contends the trial court erred in three respects: (1) by not requiring the State to elect
which offense it was using to seek a conviction; (2) in permitting the victim's mother to testify as an
outcry witness; and (3) the extent to which the victim's mother was allowed to testify as an outcry
witness. Jones also claims that the evidence was both legally and factually insufficient to sustain the
trial court's verdicts. Upon reviewing the record and the law applicable to these points, we overrule
Jones's points of error and affirm the trial court's judgment. 

Sufficiency of the Evidence

 For ease of understanding and context, we first address Jones's complaints about the
sufficiency of the evidence. In assessing the legal sufficiency (2) of the evidence to support a criminal
conviction, the mandated standard is set out in Jackson v. Virginia, 443 U.S. 307, 318-19 (1979). 

 "[T]he relevant question is whether, after viewing the evidence in the light most
favorable to the prosecution, any rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt." This standard accounts for the
factfinder's duty "to resolve conflicts in the testimony, to weigh the evidence, and to
draw reasonable inferences from basic facts to ultimate facts." Therefore, in
analyzing legal sufficiency, we "determine whether the necessary inferences are
reasonable based upon the combined and cumulative force of all the evidence when
viewed in the light most favorable to the verdict."


Clayton v. State, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) (footnotes omitted). "Under a legal
sufficiency review, 'our role is not to become a thirteenth juror. This Court may not re-evaluate the
weight and credibility of the record evidence and thereby substitute our judgment for that of the
fact-finder.'" Williams v. State, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007) (quoting Dewberry
v. State, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999)).

 In contrast to the standard for legal sufficiency, when an appellate court reviews to determine
if the evidence is factually sufficient, it reviews all of the evidence in a neutral light. Watson v. State,
204 S.W.3d 404, 414 (Tex. Crim. App. 2006). After looking at the evidence, the reviewing court
determines whether the evidence supporting the verdict is so weak that the verdict is clearly wrong
and manifestly unjust or whether the verdict is against the great weight and preponderance of the
conflicting evidence. Id. at 414-15. The jury, as the finder of fact, is the sole judge of the weight
and credibility of the witnesses' testimony. Tex. Code Crim. Proc. Ann. art. 36.13 (Vernon 2007),
art. 38.04 (Vernon 1979).

 The victim, Elizabeth, (3) testified that when she was six years old, she frequently stayed with
her maternal grandmother, Patricia Doggett. Patricia and her husband, Jones, lived in a house
together, and Elizabeth usually enjoyed being around him. Elizabeth said that on several occasions,
she and Jones watched television from the bed in Patricia's bedroom. Elizabeth described a day in
the summer between her kindergarten and first-grade years when Jones knelt on the floor with her
on the bed, pushed her panties to the side, and licked her privates. Sexual assault nurse examiner
(SANE), Stacy Hamilton, testified that she had interviewed and examined Elizabeth and, during the
course of that interview, determined that by the term "middle part," Elizabeth was making reference
to her pubic area. This was confirmed by Victoria Doggett, Elizabeth's mother. Elizabeth said that
Jones performed this act "[f]our or five" times and that Jones had also pulled "his thing" out of his
shorts and tried to make Elizabeth lick it; however, she was able to keep him from forcing this act
upon her. Elizabeth also described Jones touching her "private part . . . three or four" times. 
Elizabeth said the abusive acts always occurred in the described bedroom, not in any other room. 
Thus, from the context of the questioning and testimony, Elizabeth was describing multiple
occurrences of the same offenses. 

 As further evidence that Elizabeth was describing multiple occurrences, she described an
occasion when Jones was licking her private and Elizabeth's brother, Samuel, (4) walked in the room. 
When Jones realized the brother was present, Jones pretended to be looking for, and to have found,
a scratch on Elizabeth's leg. He then went to the bathroom for a Band-Aid, which he put on
Elizabeth. 

 Victoria testified that while she was attending college, she frequently left her two children
with Patricia, Victoria's mother. Victoria said Patricia telephoned her early in the morning of June
7, 2007, and related to her that on the previous day, the children had been at Patricia's and gone to
a softball game with Patricia, Jones, and Victoria's sister, Dominique. Victoria testified that Patricia
seemed upset during the telephone call and urged Victoria to speak to her children.

 Patricia testified that the day before calling Victoria, at the softball game, Samuel had told
Patricia that he had seen Jones licking Elizabeth's leg. Samuel testified at trial that he had walked
into the bedroom and saw Jones licking Elizabeth's privates. However, Victoria maintained that
Elizabeth had not told her grandmother anything about any sexual contact and that Victoria was the
first adult to whom Elizabeth related the allegations. This was confirmed by both Elizabeth and
Patricia. 

 When Victoria spoke to Elizabeth, Elizabeth told her that the previous two days, at her
grandmother's house, Jones had touched Elizabeth's "middle part." A few days later, Victoria spoke
again to Elizabeth, who then said Jones had, on those same two days, licked her "middle part. "
Elizabeth was taken to an interview with Hamilton (the SANE), who detected no physical trauma
or injuries to the child. Elizabeth told Hamilton that Jones (to whom Elizabeth made reference as
"Frankie") had put his hands in her panties and rubbed the top of her "middle part . . . a few times
before." 

 Based on the testimony of Elizabeth and Victoria, there is clearly enough evidence for a
rational jury to have found the elements required to support Jones's three convictions. The evidence
is legally sufficient to support the verdicts. 

 The only witness called by Jones was Patricia, who said that Elizabeth had related no
allegations of sexual abuse or contact to her and that she did not believe that Jones had done anything
to Elizabeth. We find the evidence to be factually sufficient to support the verdicts. 

 We overrule Jones's third and fourth points of error. 

No Election Was Required by the State

 Jones's first point of error alleges error in the trial court's denial of Jones's request for an
election by the State regarding the offenses for which they would seek a conviction. At the
conclusion of the State's case-in-chief, Jones asked the trial court to require the State to elect which
conduct on which it was relying for a conviction. See Scoggan v. State, 799 S.W.2d 679, 680 n.3
(Tex. Crim. App. 1990) ("When the evidence shows two or more acts of intercourse, each of which
is an offense for which the defendant may be convicted, and the indictment charges only one offense,
the State is required to elect which act it will rely upon to secure a conviction, provided the accused
makes a motion for election."). 

 As Jones emphasizes, Elizabeth offered testimony alleging multiple sexual assaults by Jones. 
However, the State alleged multiple distinct offenses in a single indictment. Specifically, the
indictment alleged that Jones committed indecency with a child by touching Elizabeth's genitals
(count I), sexual assault upon Elizabeth on or about June 6, 2006 (count III), and committed these
same offenses on or about June 5, 2006 (counts II and IV). "[T]hose who commit multiple discrete
assaults against the same victim are liable for separate prosecution and punishment for every
instance of such criminal misconduct." Gutierrez v. State, 8 S.W.3d 739, 747 (Tex. App.--Austin
1999, no pet.) (quoting Vernon v. State, 841 S.W.2d 407, 410 (Tex. Crim. App. 1992)). 

 However, in the instant situation, Jones's indictment alleged four distinct offenses. 
Section 37.07 of the Texas Code of Criminal Procedure states:

 If the charging instrument contains more than one count or if two or more offenses
are consolidated for trial pursuant to Chapter 3 of the Penal Code, the jury shall be
instructed to return a finding of guilty or not guilty in a separate verdict as to each
count and offense submitted to them. 

 

Tex. Code Crim. Proc. Ann. art. 37.07 (Vernon Supp. 2008). The "Chapter 3 of the Penal Code"
to which reference is made in Article 37.07 addresses criminal episodes. More particularly, in
defining criminal episodes, Section 3.01 of the Texas Penal Code specifies that they include
"offenses . . . committed pursuant to the same transaction or pursuant to two or more transactions
that are connected or constitute a common scheme or plan . . . repeated commission of the same or
similar offenses." Tex. Penal Code Ann. § 3.01 (Vernon 2003). Using those definitions, the
offenses alleged here are multiple offenses contained within criminal episodes. Although Jones does
not allege a misjoinder of offenses, we find no error in joining the four allegations in a single
indictment or in a single trial. See Malone v. State, 163 S.W.3d 785, 804 (Tex. App.--Texarkana
2005, pet. ref'd) (applying Section 3.03, Texas Penal Code, governing sentencing for persons
convicted of multiple offenses comprising single criminal episode, where defendant convicted of
aggravated sexual assault, sexual assault, and indecency with a child, all perpetrated upon same
victim); O'Hara v. State, 837 S.W.2d 139, 142 (Tex. App.--Austin 1992, pet. ref'd) (three instances
of sexual assault upon single victim constitute "repeated commission of the same or similar
offenses"; therefore, State properly joined three offenses in same indictment). Because the State was
entitled to seek convictions for all four offenses alleged in the indictment, pursuant to Article 37.07,
Section 1(c), we find Jones was not entitled to force the State to make an election, and therefore, the
trial court did not err. (5) 

 Within his discussion of this point of error, Jones also claims error in the trial court's charge
to the jury. Jones claims that the trial court committed error by including the following in the jury
charge: "It is not required that the prosecution prove guilt beyond all possible doubt; it is required
that the prosecution's proof excludes all 'reasonable doubt' concerning the defendant's guilt." Despite
Jones's having raised a multifarious point of error, (6) in the interest of justice, we will address this
point. The Texas Court of Criminal Appeals addressed the same complaint in Woods v. State. (7) 
There, the Texas Court of Criminal Appeals held that the trial court did not abuse its discretion by
including in the jury's charge language identical to that complained of by Jones. See Woods, 152
S.W.3d at 114-15. 

 We overrule Jones's first point of error. 

State's Outcry Witness

 Jones's second and fifth points of error concern the admission of outcry witness testimony
given by Victoria. See Tex. Code Crim. Proc. Ann. art. 38.072 (Vernon 2005). 

 The State called Victoria as an outcry witness. Victoria testified that on the morning of
June 7, 2006, her mother, Patricia, called her early in the morning and told her she needed to speak
to her children. Victoria responded on the same day and spoke to Elizabeth alone. As summarized
above, Elizabeth told Victoria that at Patricia's house, the previous two days, Jones had touched her
"middle part." A few days after this conversation, Elizabeth told Victoria that on those days, Jones
had also licked her "middle part." Jones's fifth point of error complains that the trial court erred by
deeming Victoria the proper outcry witness and allowing her to testify as such; Jones asserts that
Patricia, the child's grandmother, was the proper outcry witness. 

 A trial court's determination that an outcry statement is admissible under Article 38.072 of
the Texas Code of Criminal Procedure is reviewed under an abuse of discretion standard. Nino v.
State, 223 S.W.3d 749, 752 (Tex. App.--Houston [14th Dist.] 2007, no pet.); see Garcia v. State,
792 S.W.2d 88, 92 (Tex. Crim. App. 1990). "'[A] trial court has broad discretion in determining' the
proper outcry witness." Villanueva v. State, 209 S.W.3d 239, 247 (Tex. App.--Waco 2006, no pet.)
(quoting Garcia, 792 S.W.2d at 92).

 Jones claims the proper outcry witness was Patricia. When they were attending the softball
game (when Samuel had told Patricia that he had seen Jones inappropriately licking Elizabeth),
Patricia asked Elizabeth if Jones had done anything to her; Elizabeth had responded that he had not
and that the child had told her that during the incident her brother described, Jones had only been
removing a Band-Aid from her leg. There is nothing in the record to indicate that the child made
any description of the offense to Patricia; conversely, Victoria's testimony about what was related
to her by Elizabeth is specific, with allegations of what happened and when and where it occurred. 
Jones simply argues on appeal that "the grandmother should have been the outcry witness . . .
because" it was the child's statements to Patricia at the softball game "on June 6th that started all the
subsequent inquiries regarding alleged sexual abuse." The trial court did not abuse its discretion in
allowing Victoria to testify as the outcry witness. 

 Jones's fifth point of error is overruled.

Outcry Testimony and the State's Notice of Outcry Witness

 Jones's second point of error complains that Victoria's testimony as the outcry witness
exceeded the scope of the State's notice to Jones and that it was error for the trial court to have
allowed testimony which went beyond the notice as provided by the State. 

 The State's notice of intent to proffer outcry witness testimony summarized Victoria's
anticipated testimony as follows:

 Jane Doe (pseudonym), told her mother, Victoria Doggett, that the Defendant put his
hand inside of her panties and rubbed her "middle spot," which is Jane Doe's word
for her vagina. . . . . Jane Doe (pseudonym) said that [this] was not the first time,
that the Defendant had rubbed her vagina on other occasions as well.


 . . . .


 Jane Doe (pseudonym) told her mother, Victoria Doggett, that while she was staying
at her Granny's house, the Defendant touched and licked her "middle spot," which is
her word for her vagina. Jane Doe (pseudonym) told Victoria Doggett that this
happened two days in a row, and the second day was the day that her brother had
walked in on them. Jane Doe (pseudonym) also said that the Defendant had licked
and touched her private part the day before. . . . 


We find that the State's notice substantially conforms with the trial testimony ultimately offered by
Victoria. Additionally, Jones offers no authority for his claim that an outcry witness's testimony is
confined by the State's description of said testimony in its notice under Article 38.072 of the Texas
Code of Criminal Procedure. Accordingly, we overrule Jones's second point of error. 

 We affirm the trial court's judgment. 




 Bailey C. Moseley

 Justice


Date Submitted: November 25, 2008

Date Decided: December 10, 2008


Do Not Publish

 

1. Originally appealed to the Twelfth Court of Appeals, this case was transferred to this Court
by the Texas Supreme Court pursuant to its docket equalization efforts. See Tex. Gov't Code Ann.
§ 73.001 (Vernon 2005). We are unaware of any conflict between precedent of the Twelfth Court
of Appeals and that of this Court on any relevant issue. See Tex. R. App. P. 41.3.
2. Jones's third point of error assails the factual sufficiency of the evidence; his fourth point
of error challenges legal sufficiency. We address legal sufficiency before factual sufficiency. Clewis
v. State, 922 S.W.2d 126, 133 (Tex. Crim. App. 1996).
3. We use pseudonyms in this opinion for each of the children mentioned. 
4. Also a pseudonym.
5. To the extent Jones complains about Elizabeth's testimony that he engaged in these acts
many or several times, such evidence was arguably admissible under Tex. Code Crim. Proc. Ann.
art. 38.37 (Vernon Supp. 2008) ("[N]otwithstanding Rules 404 and 405, Texas Rules of Criminal
Evidence, evidence of other crimes, wrongs, or acts committed by the defendant against the child
who is the victim of the alleged offense shall be admitted for its bearing on relevant matters,
including: (1) the state of mind of the defendant and the child; and (2) the previous and subsequent
relationship between the defendant and the child."). We find the trial court did not abuse its
discretion in admitting this evidence. See Moreno v. State, 858 S.W.2d 453, 463 (Tex. Crim. App.
1993) (rulings on relevance should be left largely to trial court, relying on its own observations and
experience, and will not be reversed absent an abuse of discretion).
6. A point of error that embraces more than one specific ground of error is multifarious. See
Bell v. Tex. Dep't of Crim. Justice-Institutional Div., 962 S.W.2d 156, 157-58 (Tex. App.--Houston
[14th Dist.] 1998, pet. denied). If a point of error is multifarious, we could refuse to review it. See
id. However, we may consider multifarious points of error if we can determine, with reasonable
certainty, the alleged error about which complaint is made. See id.
7. 152 S.W.3d 105 (Tex. Crim. App. 2004).