

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-08-00061-CR

_____


FRANKIE LEE JONES, Appellant

V.

THE STATE OF TEXAS, Appellee


On Appeal from the 217th Judicial District Court
Angelina County, Texas
Trial Court No. 26,678


Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Moseley

MEMORANDUM OPINION

Frankie Lee Jones challenges his two convictions in Angelina County[1] for aggravated sexual assault and one for indecency with a child.  A single indictment charged Jones with two counts of indecency with a child by contact and two counts of aggravated sexual assault on a child.  He was convicted of both  indecency counts (counts I and II) and one count of aggravated sexual assault of a child (count III) but was acquitted of the second count of aggravated sexual assault (count IV).  The trial court accepted the jury's verdicts and followed the jury's recommendations in sentencing Jones to eighteen years' and fifteen years' confinement, respectively, on the indecency counts and to forty-five years' confinement on the count of aggravated sexual assault of a child.  The trial court ordered Jones's sentences be served concurrently.

Jones contends the trial court erred in three respects:  (1) by not requiring the State to elect which offense it was using to seek a conviction; (2) in permitting the victim's mother to testify as an outcry witness; and (3) the extent to which the victim's mother was allowed to testify as an outcry witness.  Jones also claims that the evidence was both legally and factually insufficient to sustain the trial court's verdicts.  Upon reviewing the record and the law applicable to these points, we overrule Jones's points of error and affirm the trial court's judgment.

---

[1]Originally appealed to the Twelfth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (Vernon 2005).  We are unaware of any conflict between precedent of the Twelfth Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

**Sufficiency of the Evidence**

For ease of understanding and context, we first address Jones's complaints about the sufficiency of the evidence. In assessing the legal sufficiency[2] of the evidence to support a criminal conviction, the mandated standard is set out in *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979).

> "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." This standard accounts for the factfinder's duty "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Therefore, in analyzing legal sufficiency, we "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict."

*Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) (footnotes omitted). "Under a legal sufficiency review, 'our role is not to become a thirteenth juror. This Court may not re-evaluate the weight and credibility of the record evidence and thereby substitute our judgment for that of the fact-finder.'" *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007) (quoting *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999)).

In contrast to the standard for legal sufficiency, when an appellate court reviews to determine if the evidence is factually sufficient, it reviews all of the evidence in a neutral light. *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006). After looking at the evidence, the reviewing court determines whether the evidence supporting the verdict is so weak that the verdict is clearly wrong

---

[2]Jones's third point of error assails the factual sufficiency of the evidence; his fourth point of error challenges legal sufficiency. We address legal sufficiency before factual sufficiency. *Clewis v. State*, 922 S.W.2d 126, 133 (Tex. Crim. App. 1996).

and manifestly unjust or whether the verdict is against the great weight and preponderance of the conflicting evidence. *Id*. at 414–15. The jury, as the finder of fact, is the sole judge of the weight and credibility of the witnesses' testimony. TEX. CODE CRIM. PROC. ANN. art. 36.13 (Vernon 2007), art. 38.04 (Vernon 1979).

The victim, Elizabeth,[3] testified that when she was six years old, she frequently stayed with her maternal grandmother, Patricia Doggett. Patricia and her husband, Jones, lived in a house together, and Elizabeth usually enjoyed being around him. Elizabeth said that on several occasions, she and Jones watched television from the bed in Patricia's bedroom. Elizabeth described a day in the summer between her kindergarten and first-grade years when Jones knelt on the floor with her on the bed, pushed her panties to the side, and licked her privates. Sexual assault nurse examiner (SANE), Stacy Hamilton, testified that she had interviewed and examined Elizabeth and, during the course of that interview, determined that by the term "middle part," Elizabeth was making reference to her pubic area. This was confirmed by Victoria Doggett, Elizabeth's mother. Elizabeth said that Jones performed this act "[f]our or five" times and that Jones had also pulled "his thing" out of his shorts and tried to make Elizabeth lick it; however, she was able to keep him from forcing this act upon her. Elizabeth also described Jones touching her "private part . . . three or four" times. Elizabeth said the abusive acts always occurred in the described bedroom, not in any other room.

---

[3]We use pseudonyms in this opinion for each of the children mentioned.

4

Thus, from the context of the questioning and testimony, Elizabeth was describing multiple occurrences of the same offenses.

As further evidence that Elizabeth was describing multiple occurrences, she described an occasion when Jones was licking her private and Elizabeth's brother, Samuel,[4] walked in the room. When Jones realized the brother was present, Jones pretended to be looking for, and to have found, a scratch on Elizabeth's leg. He then went to the bathroom for a Band-Aid, which he put on Elizabeth.

Victoria testified that while she was attending college, she frequently left her two children with Patricia, Victoria's mother. Victoria said Patricia telephoned her early in the morning of June 7, 2007, and related to her that on the previous day, the children had been at Patricia's and gone to a softball game with Patricia, Jones, and Victoria's sister, Dominique. Victoria testified that Patricia seemed upset during the telephone call and urged Victoria to speak to her children.

Patricia testified that the day before calling Victoria, at the softball game, Samuel had told Patricia that he had seen Jones licking Elizabeth's leg. Samuel testified at trial that he had walked into the bedroom and saw Jones licking Elizabeth's privates. However, Victoria maintained that Elizabeth had not told her grandmother anything about any sexual contact and that Victoria was the first adult to whom Elizabeth related the allegations. This was confirmed by both Elizabeth and Patricia.

---

[4]Also a pseudonym.

When Victoria spoke to Elizabeth, Elizabeth told her that the previous two days, at her grandmother's house, Jones had touched Elizabeth's "middle part." A few days later, Victoria spoke again to Elizabeth, who then said Jones had, on those same two days, licked her "middle part. " Elizabeth was taken to an interview with Hamilton (the SANE), who detected no physical trauma or injuries to the child. Elizabeth told Hamilton that Jones (to whom Elizabeth made reference as "Frankie") had put his hands in her panties and rubbed the top of her "middle part . . . a few times before."

Based on the testimony of Elizabeth and Victoria, there is clearly enough evidence for a rational jury to have found the elements required to support Jones's three convictions. The evidence is legally sufficient to support the verdicts.

The only witness called by Jones was Patricia, who said that Elizabeth had related no allegations of sexual abuse or contact to her and that she did not believe that Jones had done anything to Elizabeth. We find the evidence to be factually sufficient to support the verdicts.

We overrule Jones's third and fourth points of error.

**No Election Was Required by the State**

Jones's first point of error alleges error in the trial court's denial of Jones's request for an election by the State regarding the offenses for which they would seek a conviction. At the conclusion of the State's case-in-chief, Jones asked the trial court to require the State to elect which conduct on which it was relying for a conviction. *See Scoggan v. State*, 799 S.W.2d 679, 680 n.3

6

(Tex. Crim. App. 1990) ("When the evidence shows two or more acts of intercourse, each of which is an offense for which the defendant may be convicted, and the indictment charges only one offense, the State is required to elect which act it will rely upon to secure a conviction, provided the accused makes a motion for election.").

As Jones emphasizes, Elizabeth offered testimony alleging multiple sexual assaults by Jones. However, the State alleged multiple distinct offenses in a single indictment. Specifically, the indictment alleged that Jones committed indecency with a child by touching Elizabeth's genitals (count I), sexual assault upon Elizabeth on or about June 6, 2006 (count III), and committed these same offenses on or about June 5, 2006 (counts II and IV). "[*T*]*hose who commit multiple discrete assaults against the same victim are liable for separate prosecution and punishment for every instance of such criminal misconduct*." *Gutierrez v. State*, 8 S.W.3d 739, 747 (Tex. App.—Austin 1999, no pet.) (quoting *Vernon v. State*, 841 S.W.2d 407, 410 (Tex. Crim. App. 1992)).

However, in the instant situation, Jones's indictment alleged four distinct offenses. Section 37.07 of the Texas Code of Criminal Procedure states:

> If the charging instrument contains more than one count or if two or more offenses are consolidated for trial pursuant to Chapter 3 of the Penal Code, the jury shall be instructed to return a finding of guilty or not guilty in a separate verdict as to each count and offense submitted to them.

TEX. CODE CRIM. PROC. ANN. art. 37.07 (Vernon Supp. 2008). The "Chapter 3 of the Penal Code" to which reference is made in Article 37.07 addresses criminal episodes. More particularly, in defining criminal episodes, Section 3.01 of the Texas Penal Code specifies that they include

7

"offenses . . . committed pursuant to the same transaction or pursuant to two or more transactions that are connected or constitute a common scheme or plan . . . repeated commission of the same or similar offenses." TEX. PENAL CODE ANN. § 3.01 (Vernon 2003). Using those definitions, the offenses alleged here are multiple offenses contained within criminal episodes. Although Jones does not allege a misjoinder of offenses, we find no error in joining the four allegations in a single indictment or in a single trial. *See Malone v. State*, 163 S.W.3d 785, 804 (Tex. App.—Texarkana 2005, pet. ref'd) (applying Section 3.03, Texas Penal Code, governing sentencing for persons convicted of multiple offenses comprising single criminal episode, where defendant convicted of aggravated sexual assault, sexual assault, and indecency with a child, all perpetrated upon same victim); *O'Hara v. State*, 837 S.W.2d 139, 142 (Tex. App.—Austin 1992, pet. ref'd) (three instances of sexual assault upon single victim constitute "repeated commission of the same or similar offenses"; therefore, State properly joined three offenses in same indictment). Because the State was entitled to seek convictions for all four offenses alleged in the indictment, pursuant to Article 37.07, Section 1(c), we find Jones was not entitled to force the State to make an election, and therefore, the trial court did not err.[5]

---

[5]To the extent Jones complains about Elizabeth's testimony that he engaged in these acts many or several times, such evidence was arguably admissible under TEX. CODE CRIM. PROC. ANN. art. 38.37 (Vernon Supp. 2008) ("[N]otwithstanding Rules 404 and 405, Texas Rules of Criminal Evidence, evidence of other crimes, wrongs, or acts committed by the defendant against the child who is the victim of the alleged offense shall be admitted for its bearing on relevant matters, including: (1) the state of mind of the defendant and the child; and (2) the previous and subsequent relationship between the defendant and the child."). We find the trial court did not abuse its discretion in admitting this evidence. *See Moreno v. State*, 858 S.W.2d 453, 463 (Tex. Crim. App.

Within his discussion of this point of error, Jones also claims error in the trial court's charge to the jury. Jones claims that the trial court committed error by including the following in the jury charge: "It is not required that the prosecution prove guilt beyond all possible doubt; it is required that the prosecution's proof excludes all 'reasonable doubt' concerning the defendant's guilt." Despite Jones's having raised a multifarious point of error,[6] in the interest of justice, we will address this point. The Texas Court of Criminal Appeals addressed the same complaint in *Woods v. State*.[7] There, the Texas Court of Criminal Appeals held that the trial court did not abuse its discretion by including in the jury's charge language identical to that complained of by Jones. *See Woods*, 152 S.W.3d at 114–15.

We overrule Jones's first point of error.

**State's Outcry Witness**

Jones's second and fifth points of error concern the admission of outcry witness testimony given by Victoria. *See* TEX. CODE CRIM. PROC. ANN. art. 38.072 (Vernon 2005).

---

1993) (rulings on relevance should be left largely to trial court, relying on its own observations and experience, and will not be reversed absent an abuse of discretion).

[6]A point of error that embraces more than one specific ground of error is multifarious. *See Bell v. Tex. Dep't of Crim. Justice-Institutional Div.*, 962 S.W.2d 156, 157–58 (Tex. App.—Houston [14th Dist.] 1998, pet. denied). If a point of error is multifarious, we could refuse to review it. *See id.* However, we may consider multifarious points of error if we can determine, with reasonable certainty, the alleged error about which complaint is made. *See id.*

[7]152 S.W.3d 105 (Tex. Crim. App. 2004).

The State called Victoria as an outcry witness. Victoria testified that on the morning of June 7, 2006, her mother, Patricia, called her early in the morning and told her she needed to speak to her children. Victoria responded on the same day and spoke to Elizabeth alone. As summarized above, Elizabeth told Victoria that at Patricia's house, the previous two days, Jones had touched her "middle part." A few days after this conversation, Elizabeth told Victoria that on those days, Jones had also licked her "middle part." Jones's fifth point of error complains that the trial court erred by deeming Victoria the proper outcry witness and allowing her to testify as such; Jones asserts that Patricia, the child's grandmother, was the proper outcry witness.

A trial court's determination that an outcry statement is admissible under Article 38.072 of the Texas Code of Criminal Procedure is reviewed under an abuse of discretion standard. *Nino v. State*, 223 S.W.3d 749, 752 (Tex. App.—Houston [14th Dist.] 2007, no pet.); *see Garcia v. State*, 792 S.W.2d 88, 92 (Tex. Crim. App. 1990). "'[A] trial court has broad discretion in determining' the proper outcry witness." *Villanueva v. State*, 209 S.W.3d 239, 247 (Tex. App.—Waco 2006, no pet.) (quoting *Garcia*, 792 S.W.2d at 92).

Jones claims the proper outcry witness was Patricia. When they were attending the softball game (when Samuel had told Patricia that he had seen Jones inappropriately licking Elizabeth), Patricia asked Elizabeth if Jones had done anything to her; Elizabeth had responded that he had not and that the child had told her that during the incident her brother described, Jones had only been removing a Band-Aid from her leg. There is nothing in the record to indicate that the child made

10

any description of the offense to Patricia; conversely, Victoria's testimony about what was related to her by Elizabeth is specific, with allegations of what happened and when and where it occurred. Jones simply argues on appeal that "the grandmother should have been the outcry witness . . . because" it was the child's statements to Patricia at the softball game "on June 6th that started all the subsequent inquiries regarding alleged sexual abuse." The trial court did not abuse its discretion in allowing Victoria to testify as the outcry witness.

Jones's fifth point of error is overruled.

**Outcry Testimony and the State's Notice of Outcry Witness**

Jones's second point of error complains that Victoria's testimony as the outcry witness exceeded the scope of the State's notice to Jones and that it was error for the trial court to have allowed testimony which went beyond the notice as provided by the State.

The State's notice of intent to proffer outcry witness testimony summarized Victoria's anticipated testimony as follows:

> Jane Doe (pseudonym), told her mother, Victoria Doggett, that the Defendant put his hand inside of her panties and rubbed her "middle spot," which is Jane Doe's word for her vagina. . . . . Jane Doe (pseudonym) said that [this] was not the first time, that the Defendant had rubbed her vagina on other occasions as well.
>
> . . . .
>
> Jane Doe (pseudonym) told her mother, Victoria Doggett, that while she was staying at her Granny's house, the Defendant touched and licked her "middle spot," which is her word for her vagina. Jane Doe (pseudonym) told Victoria Doggett that this happened two days in a row, and the second day was the day that her brother had

11

walked in on them.  Jane Doe (pseudonym) also said that the Defendant  had licked and touched her private part the day before. . . .

We find that the State's notice substantially conforms with the trial testimony ultimately offered by Victoria.  Additionally, Jones offers no authority for his claim that an outcry witness's testimony is confined by the State's description of said testimony in its notice under Article 38.072 of the Texas Code of Criminal Procedure.  Accordingly, we overrule Jones's second point of error.

We affirm the trial court's judgment.


Bailey C. Moseley
Justice


Date Submitted:      November 25, 2008
Date Decided:        December 10, 2008

Do Not Publish

12