In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-09-00013-CR


______________________________




JAMES EDWARD PERKINS, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 6th Judicial District Court


Lamar County, Texas


Trial Court No. 22889




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Moseley



MEMORANDUM OPINION



 James Edward Perkins sold crack cocaine to a confidential informant and was convicted by
a jury for delivery of a controlled substance. The trial court assessed punishment at thirty-five years'
imprisonment in the Texas Department of Criminal Justice-Institutional Division. (1) 

 Perkins contends the evidence is legally insufficient because the testimony of the confidential
informant was not sufficiently corroborated. Perkins further contends the trial court erred in
admitting evidence, over his objection, that the informant worked successfully in the past on other
cases for the police. We affirm the trial court's judgment because (1) sufficient evidence
corroborates the confidential informant's testimony; and (2) any error occasioned by improper
admission of testimony seeking to explain the confidential informant's demeanor on the witness
stand is harmless. 

I. FACTUAL AND PROCEDURAL HISTORY

 On April 28, 2009, Perkins sold .47 grams of crack cocaine to Taimak Norman, a confidential
informant who was acting covertly on behalf of the Paris Police Department. Earlier that day,
Norman contacted Leigh Foreman, an officer working in the narcotics division of the Paris Police
Department, to advise that he knew a person who was selling crack cocaine. Based upon that
information, Foreman met with Norman to arrange for Norman's cocaine purchase. 

 Prior to the encounter with Perkins, Norman was searched to ensure that he was not carrying
any contraband on his person. Foreman then outfitted Norman with a covert audio recording device
and provided him with copied currency in order to purchase the crack cocaine. Although the record
does not reflect how Norman knew which telephone number to dial, he made a telephone call to an
unknown person (2) and made arrangements through that telephone call for the delivery of crack
cocaine to Norman's residence. This telephone conversation was recorded by the police and the
resulting transaction was videotaped by Foreman (3) from his vantage point atop Noyes Stadium,
looking down on the parking lot of Norman's apartment, where the transaction took place. (4) 

 About forty-five minutes after Norman placed the telephone call, Perkins arrived at Norman's
residence, riding as a passenger on a motorcycle driven by someone else. After Perkins alit from the
motorcycle, he and Norman engaged in conversation which Foreman described as "dope talk." 
Perkins asked Norman what he had, and Norman told him "140." Perkins then asked to see the
money and, thereafter, the money and drugs were exchanged. Although Foreman could see the
parking lot as he recorded the meeting on video, a street sign partially obscured the camera's view
of the transaction itself. The video recording, therefore, does not depict the actual exchange of
narcotics for money. Foreman was nevertheless able to identify the black male on the video
recording as Perkins, and he also identified Perkins in the courtroom as being the individual he
observed during the drug transaction. 

 Upon completion of the transaction, Foreman and fellow officers met with Norman at a
predetermined location to recover the cocaine purchased from Perkins and to retrieve the audio
recording device worn by Norman. Norman was searched once again, this time to confirm that the
only contraband he had on his person was that which had been just recently purchased from Perkins. 

 As a result of the foregoing events, Perkins was indicted on September 11, 2008, on a charge
of delivery of less than one gram of cocaine in a drug-free zone. (5)

 The State filed a notice of consolidation and joinder of this charge with another drug charge
which arose on a different date, and both matters were tried to a jury. (6)

II. CORROBORATION 

 Perkins maintains on appeal that there is no evidence to corroborate Norman's testimony. 

 Article 38.141 of the Texas Code of Criminal Procedure provides:

 (a) A defendant may not be convicted of an offense under Chapter 481,
Health and Safety Code, on the testimony of a person who is not a licensed peace
officer or a special investigator but who is acting covertly on behalf of a law
enforcement agency or under the color of law enforcement unless the testimony is
corroborated by other evidence tending to connect the defendant with the offense
committed.


 (b) Corroboration is not sufficient for the purposes of this article if the
corroboration only shows the commission of the offense.


Tex. Code Crim. Proc. Ann. art. 38.141(a), (b) (Vernon 2005).

 Legal and factual sufficiency standards of review are not applicable to a review of covert
witness testimony under Article 38.141 because corroboration of such testimony is a statutorily-
required mandate. See Tex. Code Crim. Proc. Ann. art. 38.141 (Vernon 2005). The standard for
evaluation of the sufficiency of the corroboration of the testimony of a covert witness is the same
as that of the testimony of an accomplice. Malone v. State, 253 S.W.3d 253, 257 (Tex. Crim. App.
2008); Brown v. State, 159 S.W.3d 703, 707 (Tex. App.--Texarkana 2004, pet. ref'd); see Tex.
Code Crim. Proc. Ann. art. 38.14 (Vernon 2005), for the corroboration required of an accomplice
witness. 

 A challenge of insufficient corroboration of evidence given by a covert witness described in
Article 38.141 does not stand on the same plateau as a challenge of insufficient evidence to support
the verdict as a whole. Cathey v. State, 992 S.W.2d 460, 462-63 (Tex. Crim. App. 1999). Rather,
under the test which is applied, we must exclude the testimony of the covert witness from
consideration when weighing the sufficiency of corroborating evidence under Article 38.141(a) and
examine the remaining evidence to determine whether this evidence is some which "tends to
connect" the defendant to the commission of the offense. Malone, 253 S.W.3d at 258. The tends-to-connect standard does not present a high threshold. See Cantelon v. State, 85 S.W.3d 457, 461 (Tex.
App.--Austin 2002, no pet.). 

 In determining the quantum of evidence required to corroborate covert agent testimony, each
case must be judged on its own facts, and even insignificant circumstances may satisfy the test. Id. 
Evidence is insufficient to corroborate covert agent testimony if it shows merely that the defendant
was present during the commission of the offense. McAfee v. State, 204 S.W.3d 868, 872 (Tex.
App.--Corpus Christi 2006, pet. ref'd). Although evidence tending to connect a defendant to an
offense may not be sufficient for a conviction, it need not rise to such a high threshold for purposes
of corroboration. Gill v. State, 873 S.W.2d 45, 48 (Tex. Crim. App. 1994). The corroborating
evidence must provide "suspicious circumstances" in addition to "mere presence" at the scene of a
crime which would tend to rebut that the defendant's presence at the scene of the crime was more
than simply "innocent coincidence." McAfee, 204 S.W.3d at 872. With these precepts in mind, we
shall examine the evidence to determine whether it tends to connect Perkins with the offenses
committed.

 The evidence here, absent confidential informant testimony, establishes that: (1) Norman
was a willing and cooperative informant acting at Foreman's direction; (2) Norman was searched
prior to his meeting with Perkins to ensure that he was not carrying contraband; (3) Foreman
provided Norman with $140.00 to purchase narcotics; (4) the recorded telephone call revealed
Norman calling someone to make arrangements for the delivery of narcotics to Norman's residence;
(5) Foreman fitted Norman with a covert audio recording device prior to Norman's meeting with
Perkins; (6) a video recording of the meeting between Norman and Perkins was made by Foreman
from his vantage point atop Noyes Stadium; (7) Foreman identified the person with Norman on the
video recording as Perkins; (8) Foreman identified Perkins on the audio recording asking Norman
"what he has"; (9) Foreman identified Norman on the audio recording telling Perkins he had "140";
(10) Foreman identified Perkins on the audio recording asking to see the "140"; (12) Foreman
recovered cocaine from Norman after Perkins left the area. 

 Here, we have direct eyewitness testimony from a law enforcement agent that tends to
establish Perkins's participation in this narcotics transaction. Foreman identified Perkins on the
video recording of the meeting and identified Perkins's voice on the audio recording in a
conversation capturing the essence of the transaction (i.e., the amount of money Norman was to
spend to purchase illicit drugs). All of the above-listed additional evidence is sufficient under the
test to supply the requisite corroboration. It is apparent that Perkins's purpose in meeting with
Norman was to sell narcotics.

 The evidence further shows that Perkins's companion (i.e., the driver of the motorcycle upon
which Perkins arrived) did not participate in the conversation between Norman and Perkins. In fact,
this unknown driver did not dismount the motorcycle but, rather, simply waited for Perkins to
conclude the transaction, after which they both left. In light of the fact that cocaine was recovered
from Norman after Perkins's departure, this evidence likewise tends to connect Perkins to the
commission of the offense. 

 Perkins argues that because neither the audio nor video recording of his meeting with
Norman depicts the actual exchange of cocaine for money, there is no evidence which tends to
connect him to the April 28, 2008, transaction. We do not find it necessary that corroborating
evidence under Article 38.141 of the Texas Code of Criminal Procedure depict the actual exchange
of money and drugs. If that were the case, the standard for corroborating evidence would rise to the
level of establishing guilt beyond a reasonable doubt. Such is not the standard. McDuff v. State, 939
S.W.2d 607, 613 (Tex. Crim. App. 1997) (nonaccomplice evidence need not directly link person to
crime, nor must it establish guilt beyond a reasonable doubt). As the Texas Court of Criminal
Appeals has indicated, in order to corroborate confidential informant testimony, "All the law requires
is that there be some [noncovert] evidence which tends to connect the accused to the commission of
the offense." Hernandez v. State, 939 S.W.2d 173, 178-79 (Tex. Crim. App. 1997). While each of
these circumstances (taken alone) might not be sufficient to corroborate Norman's testimony, the
weight of all of them when taken together provides the basis for a rational juror to conclude that this
evidence sufficiently tended to connect Perkins to the offense. See id. 

 Perkins further contends that because Norman went inside the apartment building before
Perkins's arrival to visit the bathroom, there was opportunity for Norman to obtain the cocaine from
a source other than from Perkins. While it is true that Norman entered the apartment for a brief
period of time upon his mother's arrival at home, it is equally plausible that Norman did so in order
to quell any suspicion his mother may have had in coming home to find her son standing alone in
the parking lot. Foreman testified that when Norman's mother came home, Norman went upstairs
and was talking with his mother; her voice was clearly audible on the recorder. Given these
circumstances, it is quite unlikely that Norman obtained the cocaine from his own apartment, at the
particular time that his mother returned home. The brief visit Norman had with his mother does not
detract from the other "suspicious circumstances" which tend to connect Perkins to the offense
committed. This possibility does not substantially detract from those suspicious circumstances and
would reflect more on the weight the jury could place on the evidence in its deliberations. 

III. RELEVANCY

 Perkins's second point of error centers on certain testimony elicited from Foreman as follows:

 Q. [THE STATE] And are there any defendants -- do you have any
information whether or not there's anyone that's causing Mr. Norman some concern
right now?

 

 A. [FOREMAN] Yes.

 

 Q. And what is that information?


 [DEFENSE COUNSEL]: Objection, relevancy, Your Honor. 

 

 THE COURT: What is the relevancy?

 

 [THE STATE]: Your Honor, what we are -- we were trying to give
them some information with reference to Mr. Norman's demeanor on the stand; one
of the things that the jury has to look for. And he didn't want to give some
information about where he was living, where he was working, et cetera. We didn't
want the jury to feel like he was withholding information, so we have an explanation
for that. 


 THE COURT: All right. I'll overrule the objection.


 After the objection was overruled, Foreman explained that certain individuals from whom
Norman purchased cocaine in the past were looking for him in order to threaten, hurt, or kill him. 
This testimony, presumably, was offered in an attempt to explain the apparent hesitancy of Norman
to provide detailed information relating to his home and work so as to squelch any opinion on the
part of the jury that such evasiveness reflected on his credibility. Perkins claims this evidence was
not relevant. 

 Rule 401 of the Texas Rules of Evidence defines relevant evidence as "evidence having any
tendency to make the existence of any fact that is of consequence to the determination of the action
more probable or less probable than it would be without the evidence." Tex. R. Evid. 401. Given
the definition of relevance, we agree that this testimony is not relevant to the issue of Perkins's guilt. 
See Roberts v. State, 866 S.W.2d 773 (Tex. App.--Houston [1st Dist.] 1993, pet. ref'd) (reliability
and accuracy of informant's information has no bearing on the offense of delivery of controlled
substance). Accordingly, Perkins's relevancy objection should have been sustained. (7) See Tex. R.
Evid. 401; Roberts, 866 S.W.2d at 778-79.

 Where error is not constitutional, we disregard it if it does not affect the appellant's
substantial rights. See Tex. R. App. P. 44.2(b). A substantial right is affected where the error causes
a substantial and injurious effect or influence in determining the jury's verdict. Johnson v. State, 43
S.W.3d 1, 4 (Tex. Crim. App. 2001); Morales v. State, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000). 
Such error is harmless if there is reasonable assurance, upon examination of the record as a whole,
that the error did not influence the jury's verdict or had but slight effect. Rivera-Reyes v. State, 252
S.W.3d 781, 787 (Tex. App.--Houston [14th Dist.] 2008, no pet.).

 While this evidence did pertain to Norman's credibility, Perkins's relevancy objection was
not abandoned when other evidence of Norman's credibility was admitted without objection; such
evidence was of a general nature, and was not the same evidence as was elicited here. See Massey
v. State, 933 S.W.2d 141, 149 (Tex. Crim. App. 1996) (holding if defendant objects to admission
of evidence, but same evidence is subsequently introduced from another source without objection,
defendant waives his earlier objection). The record of this case persuades us, however, that error
occasioned by the admission of this improper testimony was harmless. The evidence of credibility
was cumulative of testimony provided by Foreman and was unrelated to the evidence upon which
Perkins was convicted. The admission of the testimony in question was not error of such magnitude
that the jury's proper evaluation of the evidence was disrupted. Roberts, 866 S.W.2d at 776. 

 We overrule this point of contention. 

IV. CONCLUSION

 Because Norman's testimony was corroborated by evidence that tends to connect Perkins to
the transaction and because error in the admission of irrelevant testimony regarding Norman's
credibility was harmless, we affirm the judgment of the trial court. 



 Bailey C. Moseley

 Justice


Date Submitted: November 13, 2009

Date Decided: November 18, 2009


Do Not Publish
1. The indictment charged delivery of less than one gram of cocaine, which offense is
punishable as a state-jail felony. See Tex. Health & Safety Code Ann. § 481.112(b) (Vernon
Supp. 2009). Cocaine is classified as a penalty group 1 controlled substance. See Tex. Health &
Safety Code Ann.§ 481.102 (3)(D) (Vernon Supp. 2009). Perkins was also charged as an habitual
offender with two previous final felony convictions, the second of which occurred after the first
conviction became final. The punishment range thus increased to that of a second-degree felony. 
See Tex. Penal Code Ann. § 12.42(a)(2) (Vernon Supp. 2009). Because this offense was otherwise
punishable as a felony of the second degree, and because it was shown at the punishment phase of
the trial that the offense was committed within 1,000 feet of premises owned by an institution of
higher learning (Paris Junior College), the offense became punishable as a first-degree felony. See
Tex. Health & Safety Code Ann. § 481.134(b)(1) (Vernon Supp. 2009). The punishment range
for a first-degree felony is life or five to ninety-nine years in prison. See Tex. Penal Code Ann.
§ 12.32 (Vernon Supp. 2009). 
2. Norman initially believed the "unknown person" to be Perkins's nephew; later, it became
apparent that Norman was dealing with Perkins himself.
3. Foreman and two other officers were positioned at Noyes Stadium, observing the
transaction.
4. Because Norman went upstairs to his apartment to visit the restroom when his mother
returned home, Foreman was unable to observe him continually while awaiting Perkins's arrival.
5. This offense took place within 1,000 feet of Paris Junior College, an institution of higher
learning.
6. Perkins was indicted on an additional charge of delivery of a controlled substance as a result
of a sting operation in February 2008; these matters were consolidated for trial. The conviction
resulting from the earlier indictment is the subject of a separate appeal before this Court, styled
James Edward Perkins v. State, cause number 06-09-00012-CR, the opinion in which is issued of
even date herewith. 
7. Perkins argues that the testimony in question should have been excluded under Rule 403 of
the Texas Rules of Evidence. Rule 403 provides that relevant evidence may be excluded on the
ground that the probative value of the evidence is nevertheless substantially outweighed by the
danger of unfair prejudice. See Tex. R. Evid. 403. An objection that the evidence is not relevant
is not synonymous with an objection that the evidence is unfairly prejudicial under Rule 403. See
Montgomery v. State, 810 S.W.2d 372, 389 (Tex. Crim. App. 1990) (op. on reh'g).



cii-font-family:Calibri;
 mso-ascii-theme-font:minor-latin;
 mso-fareast-font-family:"Times New Roman";
 mso-fareast-theme-font:minor-fareast;
 mso-hansi-font-family:Calibri;
 mso-hansi-theme-font:minor-latin;
 mso-bidi-font-family:"Times New Roman";
 mso-bidi-theme-font:minor-bidi;}
.MsoPapDefault
 {mso-style-type:export-only;
 margin-bottom:10.0pt;
 line-height:115%;}
 /* Page Definitions */
 @page
 {mso-page-border-surround-header:no;
 mso-page-border-surround-footer:no;
 mso-footnote-separator:url("6-10-026-CR%20Hammons%20v.%20State%20FINAL%20mtd_files/header.htm") fs;
 mso-footnote-continuation-separator:url("6-10-026-CR%20Hammons%20v.%20State%20FINAL%20mtd_files/header.htm") fcs;
 mso-endnote-separator:url("6-10-026-CR%20Hammons%20v.%20State%20FINAL%20mtd_files/header.htm") es;
 mso-endnote-continuation-separator:url("6-10-026-CR%20Hammons%20v.%20State%20FINAL%20mtd_files/header.htm") ecs;}
@page WordSection1
 {size:8.5in 11.0in;
 margin:1.0in 1.0in 1.0in 1.0in;
 mso-header-margin:1.0in;
 mso-footer-margin:1.0in;
 mso-even-header:url("6-10-026-CR%20Hammons%20v.%20State%20FINAL%20mtd_files/header.htm") eh1;
 mso-header:url("6-10-026-CR%20Hammons%20v.%20State%20FINAL%20mtd_files/header.htm") h1;
 mso-even-footer:url("6-10-026-CR%20Hammons%20v.%20State%20FINAL%20mtd_files/header.htm") ef1;
 mso-footer:url("6-10-026-CR%20Hammons%20v.%20State%20FINAL%20mtd_files/header.htm") f1;
 mso-first-header:url("6-10-026-CR%20Hammons%20v.%20State%20FINAL%20mtd_files/header.htm") fh1;
 mso-first-footer:url("6-10-026-CR%20Hammons%20v.%20State%20FINAL%20mtd_files/header.htm") ff1;
 mso-paper-source:0;}
div.WordSection1
 {page:WordSection1;}
@page WordSection2
 {size:8.5in 11.0in;
 margin:2.0in 1.0in 1.0in 1.0in;
 mso-header-margin:2.0in;
 mso-footer-margin:1.0in;
 mso-even-header:url("6-10-026-CR%20Hammons%20v.%20State%20FINAL%20mtd_files/header.htm") eh1;
 mso-header:url("6-10-026-CR%20Hammons%20v.%20State%20FINAL%20mtd_files/header.htm") h1;
 mso-even-footer:url("6-10-026-CR%20Hammons%20v.%20State%20FINAL%20mtd_files/header.htm") ef1;
 mso-footer:url("6-10-026-CR%20Hammons%20v.%20State%20FINAL%20mtd_files/header.htm") f2;
 mso-first-header:url("6-10-026-CR%20Hammons%20v.%20State%20FINAL%20mtd_files/header.htm") fh1;
 mso-first-footer:url("6-10-026-CR%20Hammons%20v.%20State%20FINAL%20mtd_files/header.htm") ff1;
 mso-paper-source:0;}
div.WordSection2
 {page:WordSection2;}
 /* List Definitions */
 @list l0
 {mso-list-id:2128379695;
 mso-list-type:hybrid;
 mso-list-template-ids:708236152 67698689 67698691 67698693 67698689 67698691 67698693 67698689 67698691 67698693;}
@list l0:level1
 {mso-level-number-format:bullet;
 mso-level-text:\F0B7;
 mso-level-tab-stop:none;
 mso-level-number-position:left;
 text-indent:-.25in;
 font-family:Symbol;}
ol
 {margin-bottom:0in;}
ul
 {margin-bottom:0in;}
-->











 
 
 
 
 
 
 




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-10-00026-CR

                                                ______________________________

 

 

                                SHERMAN LEE HAMMONS,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                         On Appeal from the 5th Judicial District Court

                                                              Cass County, Texas

                                                      Trial Court No. 2008-F-00150

 

                                                      
                                            

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                              Memorandum Opinion by Justice Carter








                                                     MEMORANDUM 
OPINION

            

            Sherman
Lee Hammons was a teacher at McLeod High School.  He was convicted of an improper relationship
with his student and was sentenced to ten years imprisonment in the Texas
Department of Criminal Justice-Institutional Division.[1]  Hammons alleges that evidence establishing he
sent sexually explicit text messages on or about the 14th day of January, 2008,
to a student with intent to arouse or gratify his sexual desire was legally and
factually insufficient to support his conviction.[2]  He also argues that the statute under which
he was convicted is unconstitutional and that he had a fundamental free speech
right to engage in text messaging with a student outside of the school setting
in a consensual manner.  We conclude
that the evidence was sufficient to support his conviction.  Because Hammons failed to preserve his
remaining points of error, we will affirm the trial courts judgment.  

I.          Sufficient
Evidence Supports Hammons Conviction 

            In conducting a legal sufficiency
review, we consider the evidence in the light most favorable to the judgment to
determine whether any rational jury could have found the essential elements of
improper relationship between educator and student beyond a reasonable
doubt.  Laster v. State, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009).  We must give deference to the jurys
responsibility to fairly resolve conflicts in testimony, to weigh the
evidence, and to draw reasonable inferences from basic facts to ultimate facts.
 Hooper
v. State, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing Jackson v. Virginia, 443 U.S. 307, 31819
(1979)).  We are not required to
determine whether we believe that the evidence at trial established guilt
beyond a reasonable doubt; rather, when faced with conflicting evidence, we
presume that the jury resolved any such conflict in favor of the prosecution,
and we defer to that resolution.  State v. Turro, 867 S.W.2d 43, 47 (Tex.
Crim. App. 1993). 

            Legal
sufficiency is measured by the elements of the offense as defined by a
hypothetically correct jury charge.  Malik v. State, 953 S.W.2d 234, 240
(Tex. Crim. App. 1997).  Section 21.12 of
the Texas Penal Code states that [a]n employee of a public . . . secondary
school commits an offense if the employee engages in:  . . . (2) conduct described by Section 33.021
with a person enrolled in a public . . . secondary school at which the
employee works, regardless of the age of that person.  Tex.
Penal Code Ann. § 21.12(a). 
Section 33.021 states a person commits an offense if with the intent to
arouse or gratify the sexual desire of any person, . . . the person, over the
Internet, by electronic mail or text message . . . , intentionally:  (1) communicates in a sexually explicit
manner with a minor.  Tex. Penal Code Ann. § 33.021(b)(1)
(Vernon Supp. 2010).  The evidence will
be sufficient if it established that (1) Hammons; (2) was an employee of a
secondary school; (3) and intentionally communicated via electronic mail or
text message; (4) that was sexually explicit; (5) with a student enrolled in
the school at which Hammons worked; (6) with intent to arouse or gratify
his sexual desire.  Sexually explicit means
any communication, language, or material, . . . that relates to or describes
sexual conduct, as defined by Section 43.25. 
Tex. Penal Code Ann. §
33.021(a)(3) (Vernon Supp. 2010).  One
definition of sexual conduct is sexual contact, actual or simulated sexual
intercourse . . . .  Tex. Penal Code Ann. § 43.25(2)
(Vernon Supp. 2010). 

            Student
T.J.F. met with investigator Mark West and showed him text messages on her cell
phone from Hammons.  West described the
messages as sexually explicit.  He met
with Hammons, who admitted that he was a teacher at the high school and T.J.F.
was his student.  West obtained a written
statement from Hammons that attempted to explain the text messages.  It read:

The same day, I told [T.J.F.] that my best man was
planning a bachelor party and I asked [T.J.F.] Does she strip? . . . .
[T.J.F.] did not give me an answer, she just walked off.  The question of stripping was never brought
up again. . . .  About January 18 or
19, 2008, [T.J.F.] sent me text messages that were explicit.  I responded to her text by sending her a text
message that was explicit regarding sex. 

 

T.J.F. testified in front of the
jury that Hammons began to text message her first, that the messages were
initially innocent, and later became sexual. 
The text messages from Hammons were displayed for the jury.  They read: 


 One of a kind.  You are very hot and you have this
 shyness about you thats why I think your [sic] wild.  I just want to make out with you.  
 What you want, I
 want you [to] tease and please me, I like to play, Dress in something hot
 and sexy.  
 Im so horny
 thinking about it I can scream.  


 

            Hammons
briefing suggests this Court should only review the above text messages sent
prior to January 14, 2008, because the jury acquitted him of charges that he
sent explicit text messages on or about the 19th day of January, 2008.  However, [i]t is well settled that the on
or about language of an indictment allows the State to prove a date other than
the one alleged in the indictment as long as the date is anterior to the
presentment of the indictment and within the statutory limitation period.  Sledge
v. State, 953 S.W.2d 253, 256 (Tex. Crim. App. 1997) (citing Tex. Code Crim. Proc. Ann. art.
21.02(6) (Vernon 2009); Scoggan v. State,
799 S.W.2d 679, 680 n.3 (Tex. Crim. App. 1990)) ([T]he State is not bound by
the date alleged in the indictment . . . so long as the date proved is a date
anterior to the presentment of indictment and the crimes occurrence is not so
remote as to be barred by limitation.); Thomas
v. State, 753 S.W.2d 688, 692 (Tex. Crim. App. 1988) ([W]here an
indictment alleges that some relevant event transpired on or about a
particular date, the accused is put on notice to prepare for proof that the
event happened at any time within the statutory period of limitations.).  Thus, the jury was entitled to consider the
following text messages sent to T.J.F.:


 I
 like sideways and backwards, I would love just one chance with you.  It would be awsome [sic].  
 Come
 on and f*** me.  Well, whats
 stopping U [sic]?  NO I would f***
 you for hours.
 I
 want my stiff d*** inside that warm p****. 
 I want to feel you up and make you cum.[3]  


 

            After
considering all of the evidence on or about the three dates alleged in the
indictment (January 14, 19, and 24, 2008), the jury found Hammons guilty of
only one offense.  Since the jury had the
authority to consider all of the evidence on or about the dates alleged, it
could determine that he was guilty of only one offense and designate the one
for which he was found guilty.  A review
of all of the evidence unquestionably demonstrates that a rational jury could
find Hammons was an employee of a secondary school, and intentionally sent
explicit text messages describing sexual contact to a student enrolled in his
school.  The requisite specific intent to
arouse or gratify sexual desire can be inferred from the defendants conduct
and remarks and all the surrounding circumstances.  Villanueva
v. State, 209 S.W.3d 239, 246 (Tex. App.Waco 2006, no pet.).  Given the evidence in this case, the jury was
free to infer intent to arouse or gratify sexual desire from the content of
Hammons text messages.  We conclude the
evidence was legally sufficient.  

            Hammons
first point of error is overruled.    

II.        Hammons
Failed to Preserve Remaining Complaints

            Hammons alleges that Section 21.12
is facially unconstitutional insofar as said statute prohibits an educator
from engaging in consensual text messaging with a student outside of a school
setting.  He further claims the statute
is overbroad and violates the First Amendment insofar as it restricts his
fundamental right to engage in free speech.  As a prerequisite to presenting a complaint
for appellate review, the record must show that:  (1) the complaint was made to the trial court
by a timely request, objection, or motion . . . .  Tex. R.
App. P. 33.1(a)(1).  

            Failure
to object to the unconstitutionality of a statute waives any appellate review
of that complaint.  Karenev v. State, 281 S.W.3d 428, 434 (Tex. Crim. App. 2009); Curry v. State, 910 S.W.2d 490, 496
(Tex. Crim. App. 1995) (holding appellant waived his challenge to statute as
vague as applied because he did not specifically object at trial); Fluellen v. State, 104 S.W.3d 152, 167
(Tex. App.Texarkana 2003, no pet.) (A constitutionality challenge based on
application to the defendants case cannot be raised for the first time on
appeal.).  Hammons made no objection to
the trial court about the constitutionality of Section 21.12 of the Texas Penal
Code and did not otherwise raise the issue in his motion for new trial.  Thus, he has failed to preserve these points
of error for our review.  Williams v. State, 305 S.W.3d 886, 893
(Tex. App.Texarkana 2010, no pet.).[4]  Hammons remaining points are overruled. 

III.       Conclusion


            We
affirm the trial courts judgment.  

 

 

                                                                        Jack
Carter

                                                                        Justice

 

Date Submitted:          October 7, 2010

Date Decided:             October 22, 2010

 

Do Not Publish

 











[1]Hammons
was charged with three separate violations of Section 21.12 of the Texas Penal
Code.  Tex.
Penal Code Ann. § 21.12 (Vernon Supp. 2010).  The jury returned a guilty verdict only on
count two of the States indictment, which alleged the offense occurred on or
about the 14th day of January, 2008.  Our
opinion focuses solely on this count alleging Hammons did then and there,
while the defendant was an employee of a public secondary school, to-wit:  McLeod High School, with the intent to arouse
or gratify the sexual desire of the defendant, intentionally communicate by
electronic mail in a sexually explicit manner, to-wit:  text messaging to a cellular telephone, with
[T.J.F.], a person who was enrolled in the said McLeod High School and who was
not the defendants spouse. 

 





[2]With
Judge Cochran joining the lead opinion, authoring a concurring opinion and Judge
Womack concurring with the lead opinion and joining the concurrence, in Brooks v. State, No. PD-0210-09, 2010 WL
3894613, at **1, 14 (Tex. Crim. App. Oct. 6, 2010) (4-1-4 decision), a
plurality of the Texas Court of Criminal Appeals abolished the factual
sufficiency review established by Clewis
v. State, 922 S.W.2d 126 (Tex.
Crim. App. 1996), and its progeny.  The plurality and Judge Womack agreed that the
Jackson v. Virginia legal-sufficiency
standard is the only standard that a reviewing court should apply in
determining whether the evidence is sufficient to support each element of a
criminal offense that the State is required to prove beyond a reasonable doubt.
 Brooks,
2010 WL 3894613 at **1, 14.  Since the
Texas Court of Criminal Appeals has abolished factual sufficiency review, we
need not address the defendants challenge(s) to the factual sufficiency of the
evidence.





[3]These
text messages were saved in T.J.F.s phone under the name Shawn.  T.J.F. stated she used that alias for Hammons
because Im really open with my -- our friends see our cell phones a lot and I
didnt want everyone knowing who I was texting.  Hammons stated that Exhibit 2 containing a
text message from Shawn displayed his phone number, verifying T.J.F.s
testimony.  





[4]Moreover,
we have previously held that Section 21.12 is not unconstitutional on its face
and does not violate the First Amendment by being overly broad.  In re
Shaw, 204 S.W.3d 9, 19 (Tex. App.Texarkana 2006, pet. refd).