

# NUMBER 13-11-00161-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

---

IVAN CLAUDIO,                                                                                          **Appellant**

**v.**

THE STATE OF TEXAS,                                                                                  **Appellee.**

---

### On appeal from the 28th District Court
### Of Nueces County, Texas.

---

## MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Garza and Vela**
**Memorandum Opinion by Justice Vela**

A Nueces County grand jury indicted appellant, Ivan Claudio, for one count of

aggravated sexual assault of a child under the age of fourteen, a first-degree felony,

against J.R.T. (Count 1), *see* TEX. PENAL CODE ANN. § 22.021(a)(1)(B), (e) (West Supp. 2011), and two counts of indecency with a child by sexual contact, a second-degree felony, against J.R.T. (Count 2) and J.T. (Count 3). *See id.* § 21.11(a)(1), (d). The jury acquitted him of Count 3 but convicted him of Counts 1 and 2. The trial court assessed concurrent sentences of thirty years' imprisonment for Count 1 and twenty years' imprisonment for Count 2. By five issues, appellant asserts: (1) the trial court erred by failing to acquit him because the State failed to prove certain elements of the indictment, including venue; (2) the trial court erred by admitting and excluding certain testimony; and (3) the prosecutor made a comment that amounted to prosecutorial misconduct. We affirm.

## I. FACTUAL BACKGROUND

### A. State's Evidence

Appellant and his girlfriend, Linda,[1] lived together in a home at 1812 Elizabeth Street in Corpus Christi. On several occasions, her four-year-old grandson, J.R.T., and her two-year-old granddaughter, J.T., stayed at appellant's home while she baby-sat them. On some occasions when Linda was not at appellant's home, either J.T. or J.R.T. stayed at the home with appellant. Both children called appellant "grandpa."

About November 4, 2010, Linda left appellant's home to run an errand while J.T. stayed with appellant. When she returned, J.T. told her, "'[G]randma, grandpa made me touch his . . . we-we.'" When she asked J.T. to repeat what she said, J.T. told her, "'[G]randpa opened his pants and I touched him [sic] we-we.'" After hearing this, Linda

---

[1] Because of privacy reasons, we will not mention Linda's last name.

called the police.

On March 25, 2010, appellant went to the Corpus Christi Police Department where, after waiving his *Miranda*[2] rights, he let Detective Tonya Flores interview him. During the interview, appellant denied the allegations of sexual abuse. At trial, when the prosecutor asked Detective Flores, "[D]id the defendant make any statements about leaving town?", she responded, "[S]omething to fact [sic] that, if he was a child molester he wouldn't be here right now, he would be in Mexico or somewhere."

J.R.T. testified he attended "Pre-K" and answered "Yes" when the prosecutor asked him if anybody had ever touched his "private." When the prosecutor asked him, "Can you tell me who touched your private?", he said, "Ivan." He testified Ivan touched his private "[a] lot of times." When the prosecutor asked J.R.T., "When he touched your private, what did he touch it with?", he said, "His mouth" and stated Ivan was his "grandpa." On cross-examination, when defense counsel asked J.R.T., "Have you ever told anybody that Ivan did not touch your we-we?", he said, "No."

Julie Denney, a sexual assault nurse examiner, examined J.R.T. for any sign of sexual abuse. She testified J.R.T. "gave no history of any sexual assault or anybody touching his privates." She said J.R.T. showed no signs of trauma.

**B. Defense Evidence**

Appellant testified he met Linda in December 2006 and that they eventually began living together in his house. Even though J.T. and J.R.T. were "always" at his home, he testified he never "inappropriately touched" either child. He said he never exposed his

---

[2] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

penis to the children and stated Linda's family was at his house "more than usual," which was causing their relationship "to diminish because of lack of privacy." He wanted Linda's family out of his house, and this "upset" her. After J.T. and J.R.T. made their outcries, he went to Mexico for about two weeks because he "was overwhelmed." He came back to Texas on his own because he "wanted to face this. . . . I did nothing wrong. I did not want to hide."

On cross-examination, appellant testified he was arrested for the offenses against J.T. and J.R.T. in April 2010 and "made bond" on May 7, 2010. As a condition of bond, he was required to wear a leg monitor. However, he removed it and in October 2010, he went to Mexico. In early November 2010, he turned himself in at a border check point. When the prosecutor asked him, "Did you . . . tell Detective Flores that if you were a child molester, you would take off to Mexico or something like that?", he said, "Or something, yes."

## C. State's Rebuttal

On the day J.T. outcried, but just prior to her outcry, J.R.T.'s mother, Belinda,[3] went to appellant's house to give her mother, Linda, some keys. While Belinda was inside appellant's house, she and J.T. used the restroom. As soon as J.T. finished, Belinda sent J.T. to Linda, who was also inside appellant's house. When Belinda finished using the restroom, she saw Linda, who looked upset, talking to appellant and asking him questions. Belinda testified appellant was nervous and "looked like he was in shock." When the prosecutor asked Belinda, "Did you ever have any issues with your

---

[3] Because of privacy reasons, we will not mention Belinda's last name.

4

mom [Linda] leaving the kids with him [appellant]?", she said, "No." She stated, "My mom trusted him, so we trusted him."

## II. DISCUSSION

### A. Sufficiency of the Evidence

We first address issue five wherein appellant contends the trial court erred by failing to grant an acquittal on Counts 1 and 2, following his motion for directed verdict, based on the State's failure to prove; (1) he caused J.R.T.'s sexual organ to contact or penetrate his mouth as alleged in Count 1 of the indictment; and (2) his intent to arouse or gratify the sexual desire of any person as alleged in Count 2 of the indictment. He requests this Court to conduct a legal and factual sufficiency[4] review of the evidence.

After the State rested its case-in-chief at the guilt-innocence stage, appellant moved for a directed verdict, which the trial court denied. Appellate courts "treat a point of error complaining about a trial court's failure to grant a motion for a directed verdict as a challenge to the legal sufficiency of the evidence." *Williams v. State*, 937 S.W.2d 479, 482 (Tex. Crim. App. 1996) (citing *Cook v. State*, 858 S.W.2d 467, 470 (Tex. Crim. App. 1993)). "The standard for determining whether the evidence is legally sufficient to support a conviction is 'whether, viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Johnson v. State*, No. PD-0068-11, 2012 WL 931980, at *1 (Tex. Crim. App. Mar. 21, 2012) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319

---

[4] We point out that the court of criminal appeals has abolished factual-sufficiency review. *See Howard v. State*, 333 S.W.3d 137, 138 n.2 (Tex. Crim. App. 2011). Thus, we will only address appellant's legal-sufficiency challenges.

5

(1979)) (emphasis in original).

In *Malik v. State*, the court of criminal appeals articulated the standard for ascertaining what the "essential elements of the crime" are; "they are 'the elements of the offense as defined by the hypothetically correct jury charge for the case.'" *Johnson*, 2012 WL 931980, at *1 (quoting *Malik*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "The hypothetically correct jury charge is one that at least 'accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'" *Id.* (quoting *Malik*, 953 S.W.2d at 240). The court of criminal appeals "described the law 'as authorized by the indictment' to be 'the statutory elements of the offense . . . as modified by the charging instrument[.]'" *Id.* (quoting *Curry v. State*, 30 S.W.3d 394, 404 (Tex. Crim. App. 2000)).

**1. Aggravated Sexual Assault of a Child (Count 1)**

Section 22.021 of the Texas Penal Code provides, in relevant part:

(A) A person commits an offense:

    (1) if the person:

    .  .  .

(B) intentionally or knowingly:

    .  .  . by any means;

    (iii)    causes the sexual organ of a child to contact or penetrate the mouth, anus, or sexual organ of another person, including the actor;

6

(2) if:

. . .

(B) the victim is younger than 14 years of age; . . . .

TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(iii), (2)(B) (West Supp. 2011).

The application paragraph pertaining to Count 1 allowed the jury to convict appellant of aggravated sexual assault of a child if it found, in relevant part, he intentionally or knowingly caused "the sexual organ of [J.R.T.], a child to contact or penetrate the mouth of the defendant; and that [J.R.T.] was then younger than 14 years of age, . . . ." In this case, when the prosecutor asked J.R.T., who was four years old, if anybody had ever touched his "private," he said, "Yes." When the prosecutor asked him, "Can you tell me who touched your private?", he said, "Ivan." J.R.T. called Ivan "grandpa" and testified Ivan touched his private "[a] lot of times." When the prosecutor asked J.R.T., "When he touched your private, what did he touch it with?", he said, "His mouth."

Ricardo Jimenez, a forensic interviewer for the Children's Advocacy Center, interviewed[5] J.R.T. to determine if appellant had sexually abused him. The prosecutor played this interview to the jury. In this interview, J.R.T. stated "grandpa" touched his "wee wee," which J.R.T. had identified in the videotape of the interview as the genital area on a diagram of a male child. J.R.T. stated this happened more than one time at grandpa's house.

---

[5] Jimenez made a videotape recording of this interview, which the trial court admitted into evidence as State's exhibit 5. Defense counsel did not object that State's exhibit 5 violated the Confrontation Clause. *See* U.S. CONST. amend. VI. However, in order to preserve a claim of Confrontation Clause error, there must be a timely and specific objection to the complained-of evidence. *See Davis v. State*, 313 S.W.3d 317, 347 (Tex. Crim. App. 2010); *Paredes v. State*, 129 S.W.3d 530, 535 (Tex. Crim. App. 2004).

Appellant denied engaging in any inappropriate sexual contact with J.R.T. However, after he was released on bond, he removed his leg monitor and went to Mexico. The court of criminal appeals has "recognized that a factfinder may draw an inference of guilt from the circumstance of flight." *Clayton v. State*, 235 S.W.3d 772, 780 (Tex. Crim. App. 2007). Moreover, though J.R.T.'s sexual-assault examination revealed no evidence of sexual abuse or trauma, "[t]he testimony of a child victim alone is sufficient to support a conviction for aggravated sexual assault. . . ." *Perez v. State,* 113 S.W.3d 819, 838 (Tex. App.—Austin 2003, pet. ref'd); *see* Tex. Code Crim. Proc. Ann. art. 38.07 (West Supp. 2011); *Tear v. State,* 74 S.W.3d 555, 560 (Tex. App.—Dallas 2002, pet. ref'd). "Reconciliation of evidentiary conflicts is solely a function of the trier of fact." *Perez*, 113 S.W.3d at 838 (citing *Losada v. State*, 721 S.W.2d 305, 309 (Tex. Crim. App. 1986); *Bowden v. State*, 628 S.W.2d 782, 784 (Tex. Crim. App. 1982); *Perez v. State*, 960 S.W.2d 84, 86 (Tex. App.—Austin 1997 no pet.) (citing *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991)). Thus, the jury could have decided to disbelieve appellant's testimony and believe J.R.T.'s testimony as well as the statements he made in his videotaped interview.

After viewing the evidence in the light most favorable to the prosecution, we find a rational jury could have reasonably concluded that (1) when J.R.T. said "we-we" and "private," he was referring to his sexual organ and (2) that appellant intentionally or knowingly caused the sexual organ of J.R.T., a child younger than fourteen years of age, to contact or penetrate appellant's mouth. Therefore, we hold the evidence is legally sufficient to support appellant's conviction for aggravated sexual assault of a child.

**2. Indecency With A Child By Sexual Contact**

Section 21.11 of the Texas Penal Code provides:

(a) A person commits an offense if, with a child younger than 17 years of age, whether the child is of the same or opposite sex, the person:

> (1)  engages in sexual contact with the child or causes the child to engage in sexual contact; . . .
>
> .  .  .

(c) In this section, "sexual contact" means the following acts, if committed with the intent to arouse or gratify the sexual desire of any person:

> (1)  any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child; or
>
> (2)  any touching of any part of the body of a child, including touching through clothing, with the anus, breast, or any part of the genitals of a person.

TEX. PENAL CODE ANN. § 21.11(a)(1), (c) (West 2011).   "The testimony of a child victim alone is sufficient to support a conviction for indecency with a child."   *Navarro v. State*, 241 S.W.3d 77, 81 (Tex. App.—Houston [1st Dist.] pet. ref'd) (citing TEX. CODE CRIM. PROC. ANN. art. 38.07; *Lee v. State*, 176 S.W.3d 452, 458 (Tex. App.—Houston [1st Dist.] 2004), *aff'd*, 206 S.W.3d 630 (Tex. Crim. App. 2006)).   In a prosecution for indecency with a child, "the requisite specific intent to arouse or gratify the sexual desire of any person can be inferred from a defendant's conduct, his remarks and all surrounding circumstances."   *McKenzie v. State*, 617 S.W.2d 211, 216 (Tex. Crim. App. 1981).   "An oral expression of intent is not required; the conduct itself is sufficient to infer intent." *Villanueva v. State*, 209 S.W.3d 239, 246 (Tex. App.—Waco 2006, no pet.).   Thus, the trier of fact "could infer from [a defendant's] conduct that it was done with the intent to arouse and gratify his sexual desire."   *Id.*

9

The application paragraph pertaining to Count 2 allowed the jury to convict appellant of indecency with a child by sexual contact if it found, in relevant part, he "with the intent to arouse and gratify the defendant's sexual desire, intentionally or knowingly engage[d] in sexual contact with [J.R.T.] by touching the genitals of [J.R.T.], a child younger than 17 years of age. . . ."   In the present case, J.R.T. testified appellant touched his private "[a] lot of times" with his mouth.   Based upon this testimony along with the statements J.R.T. made in his recorded interview, the jury could find appellant committed at least one separate act of touching J.R.T.'s genitals with his mouth that constituted the crime of indecency with a child by sexual contact.   A rational jury could infer appellant had the intent to arouse and gratify his own sexual desire from this conduct.   Viewing all the evidence in a light most favorable to the verdict, we conclude that a jury could have reasonably found beyond a reasonable doubt each element of the offense of indecency with a child by sexual contact.   We hold the evidence is legally sufficient to support appellant's conviction for indecency with a child by sexual contact.   Issue five is overruled.

**B. Venue**

In issue one, appellant contends the trial court erred by failing to acquit him because the State failed to prove venue.   The indictment alleged that both offenses occurred in Nueces County, Texas.

At the conclusion of the State's case-in-chief, appellant sought a directed verdict on the ground the evidence did not prove venue in Nueces County, Texas.   The trial court denied the motion.   We presume venue was proved in the trial court unless the

10

matter was disputed in the trial court or the record affirmatively shows to the contrary. TEX. R. APP. P. 44.2(c)(1). "To sustain the allegation of venue, it shall only be necessary to prove by the preponderance of the evidence that by reason of the facts in the case, the county where such prosecution is carried on has venue." TEX. CODE CRIM. PROC. ANN. art. 13.17 (West 2005); *Murphy v. State*, 112 S.W.3d 592, 604 (Tex. Crim. App. 2003). "Proof of venue may be established through direct or circumstantial evidence." *Hernandez v. State*, 198 S.W.3d 257, 268 (Tex. App.—San Antonio 2006, pet. ref'd). The evidence "is sufficient if from the evidence the jury may reasonably conclude that the offense was committed in the county alleged." *Rippee v. State*, 384 S.W.2d 717, 718 (Tex. Crim. App. 1964).

In the present case, the evidence showed appellant lived with his girlfriend, Linda, at 1812 Elizabeth Street in Corpus Christi. Detective Flores testified this address was in Nueces County, Texas. Linda lived with appellant at this address prior to and on the date J.T. outcried to her, and J.T. and J.R.T. stayed at appellant's home on numerous occasions. We hold the jury could have reasonably concluded by a preponderance of the evidence that the offenses committed against J.R.T. occurred in Nueces County, Texas. Issue one is overruled.

**C. Admission of Testimony**

In issue two, appellant contends the trial court erred by admitting a portion of Detective Flores's testimony. Specifically, he complains the trial court erred by allowing her to testify he told her "that 'if he were a child molester he wouldn't be here right now, he would be in Mexico or somewhere[.]'"

### 1. Standard of Review

"We review a trial court's decision regarding the admissibility of evidence under an abuse of discretion standard." *Cameron v. State*, 241 S.W.3d 15, 19 (Tex. Crim. App. 2007). "Because trial courts are in the best position to decide questions of admissibility, appellate courts uphold a trial court's admissibility decision when that decision is within the zone of reasonable disagreement." *Id.*

### 2. Preservation of Error

During the State's case-in-chief, the prosecutor asked Detective Flores about a statement appellant made to her at the time she interviewed him at the police station. The trial court held an on-the-record bench conference in which the prosecutor and defense counsel participated. The bench conference transcript reveals the following:

Prosecutor: He [appellant] made a statement to [Detective] Tonya Flores that if he was a child molester, he would have taken off to Mexico.

Defense Counsel: He didn't say that on the video.

Prosecutor: We would—yes, he did. We would like to make that later to review the video. It is on the video.

Defense Counsel: I don't recall that on the video.

Prosecutor: Yeah. She [defense counsel] watched it. It is on the video.

Defense Counsel: I don't recall that being on the video, Your Honor.

At that point, the trial court excused the jury to let defense counsel view the video of appellant's interview with Detective Flores. After the jury was excused, the record reflects an off-the-record discussion occurred. After that discussion, the trial court went

12

back on the record and stated, "Objection[6] is overruled. What are we going to do?" The prosecutor replied, "I would just like to be able to ask her [Detective Flores] about the statements he [appellant] made to her and ask if that was a particular statement that he made." Then, the trial court stated, "Bring out the jury and your objection is noted on the record, . . . ." After the jury returned to the courtroom, the prosecutor asked Detective Flores, "At any time. . . . did the defendant make any statements about leaving town?" Without objection, she replied, "One comment he made—I'm not going to quote it but it was something to fact [sic] that, if he was a child molester he wouldn't be here right now, he would be in Mexico or somewhere." Later, during appellant's cross-examination, the prosecutor asked him, "Did you also tell Detective Flores that if you were a child molester, you would take off to Mexico or something like that?" Without objection, he said, "Yes—". While still on cross-examination, the prosecutor asked appellant, "Did you tell Detective Flores if you were a child molester, you would take off to Mexico or somewhere?" Without objection, he said, "Or somewhere, yes."

It is unnecessary to decide whether Detective Flores's testimony is inadmissible because defense counsel did not preserve this complaint for our review. "As a prerequisite to presenting a complaint on appeal, a party must have made a timely and specific request, objection, or motion to the trial court." *Grant v. State*, 345 S.W.3d 509, 512 (Tex. App.—Waco 2011, pet. ref'd) (citing TEX. R. APP. P. 33.1(a)(1)(A)). "It is also necessary that the objecting party must continue to object each time the objectionable question or evidence is offered, obtain a running objection, or request a hearing outside

---

[6] The grounds for the objection are not stated in the record.

13

the jury's presence in order to preserve a complaint for appellate review." *Id.*; see *Martinez v. State*, 93 S.W.3d 189, 193 (Tex. Crim. App. 2003); *Fuentes v. State*, 991 S.W.2d 267, 273 (Tex. Crim. App. 1999). In the present case, defense counsel (1) did not renew her objection when the prosecutor asked Detective Flores if appellant made any statement about leaving town; and (2) did not object when the prosecutor asked appellant if he told Detective Flores that if he was a child molester he would have gone to "Mexico or somewhere". Furthermore, defense counsel did not obtain a running objection and did not request a hearing outside the jury's presence with respect to any of these questions. Thus, we conclude this complaint was not preserved for appellate review. *See* TEX. R. APP. P. 33.1. Issue two is overruled.

## D. Exclusion of Testimony

In issue three, appellant contends the trial court erred by excluding his testimony regarding his attorney's advice and why he (appellant) left the country. We review a trial court's exclusion of evidence under an abuse-of-discretion standard. *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011).

### 1. Background

During appellant's direct examination at the guilt-innocence stage, defense counsel interrogated him as follows:

> Q.  How scared were you on this matter?  Well, what was your reaction to everything going on?
>
> A.  The initial response when I heard about [J.T.'s] outcry was, I was really confused as to—
>
> Q.  Why were you confused?

A.  Well, because I don't know why she would say that.  I didn't know why she would say that.

Q.  And then how about with [J.R.T.]?

A.  [J.R.T.] was even worse.  It was worse.

Q.  Were you scared?

A.  Yes.

Q.  How scared were you?

A.  Very scared.

Q.  Did you end up going to Mexico?

A.  Yes, I did.

Q.  Why?

A.  Because I was overwhelmed.

Q.  How long were you gone?

A.  Approximately two, maybe two and a half weeks.

Q.  Did you end up coming back on your own?

A.  Yes, I did.

Q.  Why did you come back?

A.  Because I . . . wanted to face this.  I . . . did nothing wrong.  I did not want to hide.

Q.  But you took off before, right?

A.  I went to Mexico because I was overwhelmed and I returned because I wanted to face this.  I did not want to be known as some fugitive.

While on re-direct-examination, defense counsel asked appellant, "Did you have confidence in your previous attorney?" Before appellant could reply, the prosecutor objected that the testimony was not relevant. Before ruling on the objection, the trial court asked defense counsel, "What is your relevance on this issue?" She replied, "Well, with the confidence of having the attorney, we are not going to mention the attorney, It's that he [appellant] just freaked out because the attorney wasn't doing anything for him, nothing, nothing, nothing; but that would be the reason why. If not, we will just pass the witness." The trial court sustained the objection but allowed defense counsel to make a bill of exceptions.[7] At the conclusion of the bill, the trial court again sustained the

---

[7] During the bill, defense counsel asked appellant the following:

Q.  Mr. Claudio, we weren't your first attorney in this matter?

A.  No.

Q.  Without saying the name, but you had a prior attorney in this matter?

A.  Yes, I did.

Q.  Did you have problems with that prior attorney?

A.  Yes, I did.

Q.  What were the problems that you had concerning this attorney?

A.  He was not representing me properly.

Q.  What do you mean by that?

A.  He was not showing up for his appointments. He did not have an office. He was scarcely available. We did not go over any kind of documentation.

Q.  Did you see any of the evidence against you?

A.  The first time I saw it is when we both saw the videos together was the first time—

Q.  Who is we?

A.  You and I.

16

prosecutor's objection.

Q. Okay. So at the point with the whole representation with the other attorney, you never saw any of the videos?

A. Never.

Q. Did you see any of the paperwork?

A. None.

Q. Did you try calling him repeatedly?

A. Yes.

Q. What was your reaction to all this?

A. I felt that I was going to be in serious trouble because he could not represent me properly.

On cross-examination, the prosecutor asked him the following:

Q. Was that first attorney retained or appointed?

A. He was retained.

Q. And who retained him?

A. My family did.

Q. Okay. And did you make efforts to contact him?

A. Yes, I did, several.

Q. Did you ever bring those issues up to the Court by saying that you were not satisfied with that attorney?

A. No.

Q. Why not?

A. Because I left.

Q. So instead of coming in and addressing the Court that there were issues with that attorney, you absconded?

A. Yes.

This concluded the bill of exceptions.

## 2. Analysis

"Evidence must satisfy two requirements to be considered relevant: first, materiality, and second, probativeness." *Miller v. State*, 36 S.W.3d 503, 507 (Tex. Crim. App. 2001). "For evidence to be material it must be shown to be addressed to the proof of a material proposition, i.e., any fact that is of consequence to the determination of the action." *Id.* (internal quotation marks omitted). "If the evidence is offered to help prove a proposition which is not a matter in issue, the evidence is immaterial." *Id.* (internal quotation marks omitted). "If the proponent establishes that the proffered evidence is material, Rule 401 [of the Texas Rules of Evidence] also requires that the proponent establish the evidence is probative, i.e., the proffered evidence must tend to make the existence of the fact more or less probable than it would be without the evidence." *Id.* (internal quotations marks omitted). "The proffered evidence is relevant if it has been shown to be material to a fact issue and if it makes that fact more probable than it would be without the evidence." *Id.*

In the present case, appellant twice testified he went to Mexico because he was "overwhelmed." After the jury heard this testimony, defense counsel sought to show that, because appellant received inadequate representation from his previous attorney, he "freaked out." However, appellant did not testify in the bill of exceptions that he "freaked out" and went to Mexico because of his previous attorney's inadequate representation. Accordingly, the proffered testimony is immaterial and therefore inadmissible because it was not shown to be addressed to the proof of a material proposition. We hold the trial court did not abuse its discretion by excluding the proffered

testimony.   Issue three is overruled.

## E. Prosecutorial Misconduct

In issue four, appellant contends prosecutorial misconduct occurred when the prosecutor made a comment that amounted to her personal opinion regarding his reason for going to Mexico.

### 1. Background

During the guilt-innocence stage, the prosecutor, while cross-examining appellant, asked him:

> Q.    So it is your testimony these children [J.T. and J.R.T.] are lying. Why would they lie?
>
> A.    Because they don't know that they are lying.   They do not know that saying something like this could get somebody in trouble.
>
> Q.    So do you think these kids just made it up?
>
> A.    No.
>
> Q.    So you think someone put them up to it?
>
> A.    Yes.
>
> Q.    If you felt that way, why did you return to Mexico?
>
> A.    I tried to explain that.
>
> Q.    Okay.
>
> A.    Do you want me to explain it?
>
> A.    No, *I think it is pretty clear why you did it*.

(emphasis added).   At that point, defense counsel objected that "Counsel is testifying." The trial court replied, "Well, it is sidebar.   Sustained."   Defense counsel did not request

19

an instruction to disregard the comment or seek a mistrial.

## 2. Preservation of Error

"A request for an instruction to disregard is essential to the preservation of error only when such an instruction could have had the effect desired by the requesting party." *Cruz v. State*, 225 S.W.3d 546, 548 (Tex. Crim. App. 2007). Here, the prosecutor's comment was not so inflammatory or prejudicial that an instruction to disregard it would not have cured the error. *See Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000) (stating that "[i]n most instances, an instruction to disregard the remarks will cure the error"). Thus, appellant has failed to preserve this complaint for appellate review. *See Cruz*, 225 S.W.3d at 548.

Even assuming error had been preserved, we perceive no reversible error. Claims of misconduct arising from an inappropriate remark by the prosecutor "will not constitute reversible error unless, in light of the record as a whole," the remark "is extreme or manifestly improper, violative of a mandatory statute, or injects new facts harmful to the accused into the trial proceeding." *See Wesbrook*, 29 S.W.3d at 115. "The remarks must have been a willful and calculated effort on the part of the State to deprive appellant of a fair and impartial trial." *Id.* (citing *Cantu v. State*, 939 S.W.2d 627, 633 (Tex. Crim. App. 1997)).

In light of this record as a whole, the remark was not extreme or manifestly improper, did not violate a mandatory statute, and did not inject new facts harmful to appellant into the trial proceeding. In addition, the prosecutor, by making the remark, did not show a willful and calculated effort on the part of the State to deprive him of a fair and

20

impartial trial.   *See id.*   Issue four is overruled.

### III. CONCLUSION

We affirm the trial court's judgment.


ROSE VELA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
10th day of May, 2012.